NANCY HERSH, ESQ., State Bar No. 49091
MARK E. BURTON, JR., ESQ., State Bar No. 178400
RACHEL ABRAMS, ESQ., State Bar No. 209316
CYNTHIA BROWN, ESQ., State Bar No. 248846
HERSH & HERSH, A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6388
Telephone: (415) 441-5544

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHINDER KHANNA, | ) CASE NUMBER 3:08-CV-1131 JL |
| Plaintiff, | ) |
| | ) MEMORANDUM OF POINTS AND |
| vs. | ) AUTHORITIES IN SUPPORT OF |
| | ) MOTION TO REMAND THIS CASE |
| | ) TO THE SUPERIOR COURT OF |
| SMITHKLINE BEECHAM | ) THE STATE OF CALIFORNIA |
| CORPORATION d/b/a | ) |
| GLAXOSMITHKLINE, MCKESSON | ) Date: April 16, 2008 |
| PHARMACY SYSTEMS, and DOES | ) Time: 9:30 a.m. |
| ONE through FIFTEEN, inclusive, | ) Ctrm: Courtroom F, 15th Floor |
| | ) |
| Defendants. | ) Honorable James Larson, Chief |
| | )         Magistrate Judge |
| _____ | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND THIS CASE TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF THE CASE ....................................................................................... 1

III. STATEMENT OF FACTS .............................................................................................. 1

IV. STANDARD OF REVIEW ............................................................................................. 2

V. ARGUMENT .................................................................................................................. 3

    A. REMOVAL IS IMPROPER BECAUSE DEFENDANT MCKESSON IS A CALIFORNIA CITIZEN ............................................... 3

    B. PLAINTIFF PROPERLY JOINED AND ALLEGED VIABLE CAUSES OF ACTION AGAINST DEFENDANT MCKESSON ................ 4

        1. Strict Liability For Failure To Warn Runs To Distributors ................ 8

        2. McKesson Is Not Exempt From Strict Liability Because The "Learned Intermediary" Doctrine Does Not Apply To Distributors ......................................................................................... 9

    C. REMOVAL OF THIS CASE IS COUNTER TO PRIOR RULINGS IN THE FEDERAL COURTS OF CALIFORNIA ..................................... 10

    D. REMOVAL IS IMPROPER BECAUSE THERE IS NO FEDERAL QUESTION NECESSARY FOR ADJUDICATION ................................. 11

VI. CONCLUSION ............................................................................................................. 13

HERSHANDHERSH
A Professional Corporation

# TABLE OF AUTHORITIES

Page

*Cases*

*Abbot by Abbot v. American Cyanamid Co.* (4th Cir. 1988) 844 F.2d 1108 .......................13

*Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987 ...............................6, 9

*Barth v. B.F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228 ............................................10

*Boyer v. Snap-On Tools Corp.* (3rd Cir. 1990) 913 F.2d 108................................................4

*Brown v. Superior Court (Abbott Labs)* (1988) 44 Cal.3d 1049..............................7, 10, 11

*Canifax v. Hercules Powder Co.* (1965) 237 Cal.App.2d 44.................................................9

*Carlin v. Superior Court (Upjohn Co.)* (1996) 13 Cal.4th 1104...................................11, 13

*Cryolife, Inc. v. Superior Court of Santa Cruz County* (2003) 110 Cal.App.4th 1145 ........11

*Davis v. Prentiss Prop. Ltd.* (9th Cir. 1999) 66 F.Supp.2d 1112..............................................5

*Dodson v. Spiliada Maritime Corp.* (5th Cir. 1992) 951 F.2d 40 ...........................................3

*Fogo v. Cutter Laboratories, Inc.* (1977) 68 Cal.App.3d 744 ..............................................10

*Ford v. Elsbury* (5th Cir. 1994) 32 F.3d 931 .........................................................................5

*Freeman v. Bragunier Masonry Contractors, Inc.* (Dist. Md. 1996) 928 F. Supp. 611............................................................................................................................5

*Grable & Sons v. Darue Engineering & Manufacturing*, 125 S. Ct. 2363...........................12

*Green v. Amerada Hess Corp.* (5th Cir. 1983) 707 F.2d 201 ............................................4, 5

*Jernigan v. Ashland Oil Co.* (5th Cir. 1993) 989 F.2d 812.....................................................4

*Jimenez v. Superior Court of San Diego County* (2002) 29 Cal.4th 473...............................9

*Little v. Purdue Pharma*, LP (S.D. Ohio 2002) 227 F.Supp.2d 838 .......................................3

*Macey v. Allstate Prop. & Gas Ins. Co.* (N.D. Cal. 2002) 220 F.Supp.2d 1116....................6

*Mazur v. Merck & Co., Inc.* (E.D.Pa. 1990) 742 F.Supp. 239..............................................13

*McCabe v. General Foods Corp.* (9th Cir. 1987) 811 F.2d 1336 .....................................2, 6

*Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470.......................................................................14

*Morris v. Princess Cruises, Inc.* (9th Cir. 2001) 236 F.3d 1061 .................................................. 2

*Murphy v. E.R. Squibb & Sons, Inc.* (1985) 40 Cal.3d 672 .............................................. 10, 11

*Peloza v. Capistrano Unified Sch. Dist.* (9th Cir. 1994) 37 F.3d 517 ...................................... 3

*Plute v. Roadway Package Sys., Inc.* (N.D. Cal. 2001) 141 F.Supp.2d 1005 ..................... 2, 5

*Reigal v. Medtronic*, U.S. Supreme Court, Case No. 06-1249 .............................................. 13

*Ritchey v. Upjohn Drug Co.* (9th Cir. 1998) 139 F.3d 1313 .................................................. 5

*San Diego Hosp. Assn. v. Superior Court of San Diego County* (1994) 30 Cal.App.4th 8 ................................................................................................................ 11

*Sanchez v. Monumental Life Ins. Co.* (9th Cir. 1996) 102 F.3d 398 ...................................... 5

*Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256 ..................................................... 9, 10

*Warner-Lambert Co. v. Kent.*, U.S. Supreme Court, Case No. 06-1498 .............................. 13

*Wyeth v. Levine*, U.S. Supreme Court, Case No. 06-1249 ................................................... 13

## *Statutes*

28 USC §1332 .................................................................................................................. 1, 2, 3

28 USC §1332(c)(1) ................................................................................................................ 3

28 USC §1447(c) ..................................................................................................................... 1

28 USC 9 1441(b) ................................................................................................................ 2, 3

Business and Professions Code 9~17200 ........................................................................ 3, 5, 8

Business and Professions Code 9~17500 ........................................................................ 3, 5, 8

- iii -

## I. INTRODUCTION

Defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE ("GSK") fails to meet its burden to show this Court has removal jurisdiction. GSK does not show diversity of citizenship exists. Defendants alleged with neither factual nor legal support that the non-diverse Defendant McKesson Corporation ("McKesson") was fraudulently joined.

The non-diverse Defendant McKesson is properly joined and Defendants' Notice of Removal is legally deficient. Accordingly, Plaintiff move to remand this case to state court on two grounds: (1) lack of subject matter jurisdiction and (2) defects in the removal procedure. See 28 USC §1447(c).

## II. STATEMENT OF THE CASE

Plaintiff Mohinder Khanna filed a Complaint on February 19, 2008 in California Superior Court for the County of San Francisco against GSK, the manufacturer, and the distributor, McKesson, whom Defendants do not dispute is a California corporation. GSK removed this action on February 25, 2008, alleging diversity jurisdiction under 28 USC §1332. Plaintiff moves now to remand because removal is improper.

## III. STATEMENT OF FACTS

Plaintiff, a resident citizen of the State of California, Contra Costa County, brought this product liability action against GSK and McKesson after Plaintiff suffered heart attack, congestive heart failure, and permanent injury to his heart as a result of ingesting the Defendant's pharmaceutical drug Avandia. Avandia was widely advertised by the Defendants as an effective and safe treatment for diabetic patients. Said Defendants, and each of them, minimized the risks posed to diabetic patients by ingestion of Avandia and purposefully downplayed and understated the health hazards and risks associated with Avandia. Defendants, through promotional literature, deceived potential users of Avandia by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendant GSK and Defendant McKesson

- 1 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

manufactured marketed, distributed, and sold this drug to retailers for resale to physicians, hospitals, medical practitioners and the general public. Plaintiff was unaware and uninformed of the risks of ingesting Avandia. Defendants breached their duties as manufacturers, distributors, and marketers. Plaintiff suffered severe and permanent injury as a direct and proximate result of Defendants' actions.

## IV.  STANDARD OF REVIEW

For removal based on diversity, 28 USC §1332 requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc.* (9th Cir. 2001) 236 F.3d 1061, 1067. Additionally, removal is not allowed where one of the defendants is a "citizen of the State in which such action is brought." 28 USC 9 1441(b). Plaintiff Khanna and McKesson are citizens of California. If McKesson can be a party, removal is improper. However, if McKesson cannot be in this litigation and is named simply to avoid diversity removal, there may be a fraudulent joinder, and diversity is not defeated. Joinder of a resident defendant is only fraudulent if the plaintiff fails to state a cause of action against that defendant and the failure is obvious according to the settled rules of the state. *McCabe v. General Foods Corp.* (9th Cir. 1987) 811 F.2d 1336, 1339. "There is a presumption against finding fraudulent joinder, and defendants who assert that [the] plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.* (N.D. Cal. 2001) 141 F.Supp.2d 1005, 1008. Courts have denied claims of fraudulent joinder when there is any possibility that a plaintiff may prevail on the cause of action against the in-state defendant. *Plute*, 141 F.Supp.2d at 1008, 1012. "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.", *Plute*, 141 F.Supp.2d at 1008 (quoting *Dodson v. Spiliada Maritime Corp.* (5th Cir. 1992) 951 F.2d 40, 42-43. Furthermore, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand; a lack of clear precedent does not render the joinder fraudulent. *Plute*, 141 F.Supp 2d at 1008; See *Peloza v. Capistrano Unified Sch. Dist.* (9th Cir. 1994) 37 F.3d 517, 521 (courts must

interpret general allegations to "embrace whatever specific facts might be necessary to support them"); *Little v. Purdue Pharma*, LP (S.D. Ohio 2002) 227 F.Supp.2d 838, 847, n. 12 ("in light of the heavy burden on defendants to show the non-diverse defendants were fraudulently joined, it seems to this Court that a finding of fraudulent joinder should not be based on factual deficiencies within the pleadings which are correctable by amendment"). Here, Defendants must show by clear and convincing evidence that under no circumstances could McKesson be liable for any of Plaintiffs' claimed injuries.

## V.  ARGUMENT

### A.  REMOVAL IS IMPROPER BECAUSE DEFENDANT MCKESSON IS A CALIFORNIA CITIZEN

Federal diversity jurisdiction requires that all parties to the action be "citizens of different states" of "citizens of subjects of a foreign state." 28 USC §1441; 28 USC §1332. A corporation is deemed a citizen of the state in which it is incorporated and of the state where it has its principal place of business. 28 USC §1332(c)(1). Even if complete diversity exists, removal is not allowed where one of the defendants is a "citizen of the State in which such action is brought." 28 USC §1441(b).

Defendants removed this action based solely upon diversity jurisdiction. They imply that the parties to this action are completely diverse because the local defendant, McKesson, is a sham defendant. To succeed, Defendant must point to some California law that clearly indicates joinder is fraudulent. Plaintiffs have sued McKesson under products liability, fraud, warranty, strict liability and negligence principles as well as under the Business and Professions Codes 9~17200 and 17500, which are recognized causes of action against distributors and designers of medications in the State of California. See Notice of Ruling (with attached Revised Ruling on Request for Reconsideration by Judge Victoria Chaney), Vioxx Cases, California Superior Court for Los Angeles County, Case No. JCCP 4247, filed on or about May 22, 2006, Declaration of Amy Eskin, Exhibit "G").

Defendants seek a ruling that would in effect decide substantive factual disputes and

- 3 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

terminate Plaintiffs' causes of action against McKesson. The effect of allowing removal would be to find there is no way McKesson could ever have any liability in this matter. However, a district court must not decide substantive factual issues in order to answer the threshold question of whether joinder of an in-state defendant is fraudulent. *Green v. Amerada Hess Corp.* (5th Cir. 1983) 707 F.2d 201, 204. The only issue the court should address is its own jurisdiction. Id., at 204.

The removing defendant has the heavy burden of alleging and proving the non-diverse party's joinder is "sham" or "fraudulent." *Jernigan v. Ashland Oil Co.* (5th Cir. 1993) 989 F.2d 812, 815-816; *Boyer v. Snap-On Tools Corp.* (3rd Cir. 1990) 913 F.2d 108. In order to establish the plaintiff fraudulently joined an in-state defendant for purposes of defeating removal jurisdiction, the defendant must show either (1) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, or (2) that there has been outright fraud in plaintiff's pleading of jurisdictional facts. *Freeman v. Bragunier Masonry Contractors, Inc.* (Dist. Md. 1996) 928 F. Supp. 611; *Ford v. Elsbury* (5th Cir. 1994) 32 F.3d 931, 938; *Green v. Amerada Hess Corp.* (5th Cir. 1983) 707 F.2d 201, 205. As is more fully set out below, the allegations of the Complaint state causes of action against McKesson and the rulings of Judges Hayes and Chaney, coupled with substantive law, support that it is not fraudulently joined.

Here, the Court lacks diversity jurisdiction because the parties are not diverse. Plaintiff is a resident citizen of California and Defendants do not dispute that Defendant McKesson Corporation is a California corporation with its principal place of business in San Francisco. Declaration of Amy Eskin, Exh. A. Therefore, removal is improper and this Court should remand the action.

**B. PLAINTIFF PROPERLY JOINED AND ALLEGED VIABLE CAUSES OF ACTION AGAINST DEFENDANT MCKESSON**

The removing defendant faces a strong presumption against removal and bears the burden of establishing that removal was proper by a preponderance of evidence. *Sanchez v. Monumental Life Ins. Co.* (9th Cir. 1996) 102 F.3d 398, 403-04. The party alleging

- 4 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

fraudulent joinder bears a heavy burden: it must show "that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the Plaintiff's pleadings of jurisdictional facts." *Davis v. Prentiss Prop. Ltd.* (9th Cir. 1999) 66 F.Supp.2d 1112, 1113 (emphasis added); *Plute v. Roadway Package Sys., Inc.* (N.D. Cal. 2001) 141 F.Supp.2d 1005, 1008; *Ritchey v. Upjohn Drug Co.* (9th Cir. 1998) 139 F.3d 1313, 1318 (holding that defendant bears the burden to prove Plaintiff's failure to state a cause of action against the non-diverse defendants is obvious according to settled rules of law); *McCabe v. General Foods Corp.* (9th Cir. 1987) 811 F.2d 1336, 1339; *Macey v. Allstate Prop. & Gas Ins. Co.* (N.D. Cal. 2002) 220 F.Supp.2d 1116, 1117-18 (holding that the court must remand where there is a "non-fanciful possibility" that the Plaintiff can state a claim against the non-diverse defendants). Further, the Court must consider the Plaintiff's well-pleaded allegations as true and view the complaint in the light most favorable to the non-moving party. *Davis*, 66 F.Supp.2d at 1113-14; *Plute*, 141 F.Supp.2d at 1008.

GSK did not meet its burden to show Plaintiff's allegations fail to provide a basis for liability against McKesson, or that the alleged failure is obvious as a matter of settled law. Taking all of the allegations in the Complaint for true, Plaintiff overwhelmingly demonstrated a "possibility of a right to relief." Plaintiff alleges causes of action against McKesson for McKesson's liability for breach of its duties to Plaintiff. Plaintiff targets McKesson specifically for strict liability, negligence, negligent misrepresentation and fraud, as well as liability under Business and Professions Code Sections 17200 and 17500.

GSK's argument is directly contrary to well established strict liability law in California. A distributor, unlike pharmacists, is liable for failure to warn. *Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987. Therefore, specific allegations of failure to warn can be made against each Defendant, including McKesson Corporation. *See, infra,* Part III.1.

McKesson's liability stems from its role as a marketer, distributor, and seller of Avandia. Plaintiff asserted material allegations in the Complaint that these pharmaceutical

- 5 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

drugs were widely marketed as a safe and effective treatment for increasing insulin sensitivity without causing serious effects, harm or injury; Defendants downplayed or concealed the associated health risks and continued to defend the safety of these drugs after a study confirming risk of heart problems was published. After Avandia was approved by the FDA and made available to the public, studies showed it contained risks of the precise cardiovascular injury that Plaintiff Mohinder Khanna sustained.

It is not inconsistent to argue that both GSK and McKesson were aware, or could have been aware, of the scientifically knowable risks of Avandia. McKesson is a sophisticated pharmaceutical distributor, in the direct chain of distribution, that knew or should have known of the dangers of these pharmaceuticals.

Defendant McKesson is far more than a conduit for Avandia. It takes an active role in marketing by providing its sales force, in collaboration with its customers, such as Defendant GlaxoSmithKline. More particularly, on December 21, 1998, Defendant McKesson announced its acquisition of Kelly/Waldron and Kelly Waldron/SFA (hereinafter "Kelly/Waldron"). (McKesson Corporation, *McKesson to Acquire Kelly/Waldron and Kelly Waldron/SFA to Expand Marketing, Data Analysis and Sales Support Services for Pharmaceutical and Biotechnology Manufacturers*, press release dated December 21, 1998, Declaration of Amy Eskin In Support of Plaintiffs Motion To Remand To State Court (hereinafter, "Eskin Declaration"), at Exhibit A). Kelly/Waldron was a provider of "sales force automation systems and services for pharmaceutical sales forces." Id. McKesson's motivation in making this acquisition is obvious:

> Kelly/Waldron offers a broad array of decision support, marketing research, data analysis and sales and marketing services which enable pharmaceutical and biotechnology manufacturers to more cost-effectively market their products to physicians, nurses, physician assistants, other medical professionals and consumers. These services include return-on-investment studies of promotional activities, developing and implementing direct marketing programs, database processing and management, sales force detailing support and providing proprietary marketing list data. Kelly/Waldron is one of only ten licensees to the American Medical Association master database of all US. physicians.

- 6 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Id.

This acquisition also provided Defendant McKesson control of Kelly/Waldron's Dynastrat@ system, a data mining software tool designed specifically for segmentation analysis, promotional activity impact, ROI measurement, physician targeting, forecasting and field sales force optimizations and planning.

McKesson clearly was more than the passive "distributor", and, in fact, upon information and belief, did market and distribute Avandia to Plaintiff and the general public in California. Upon information and belief, all Defendants acted jointly to widely and successfully market Avandia in the United States, by undertaking an advertising blitz extolling the virtues of Avandia in order to induce widespread use of the product. The marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other healthcare providers, and other promotional materials provided to potential Avandia users and/or prescribers.

The advertising program, as a whole, sought to create the image, impression and belief by consumers and physicians that the use of Avandia was safe for human use, was more beneficial and efficacious than other blood sugar control medications. Defendants, and each of them, purposefully downplayed and understated the health hazards and risks associated with Avandia. Defendants, through promotional literature, deceived potential users of Avandia by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendants concealed material relevant information from potential Avandia users and minimized user and/or prescriber concerns regarding the safety of Avandia.

GSK has made deliberate misrepresentations regarding Avandia to the Food and Drug Administration, prescribing physicians, and directly to consumers. At the same time, numerous studies, some by GSK itself, were publicly available *to McKesson*, as well as several scientific articles and publications which questioned the validity of GSK's misrepresentations and should have placed McKesson on notice of the scientific risks of

- 7 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Avandia. McKesson worked with GSK to develop and distribute these pharmaceuticals without apprising itself of known or knowable dangers and without adequately warning Plaintiff of those known or knowable dangers.

Plaintiff's allegations connect McKesson to the injuries sustained by Plaintiff and establish a "non-fanciful possibility" that Plaintiff can state a claim against McKesson under strict liability failure to warn, fraud, and negligence theories as well as under Business and Professions Code Sections 17200 and 17500. Moreover, these are recognized causes of action against distributors under California law. As such, Plaintiff's allegations demonstrate a clear possibility of a right to relief. Defendant GSK therefore failed to meet its burden and the action should be remanded.

Plaintiff has alleged causes of action against a legitimate local defendant in this lawsuit and contends that McKesson was integrally involved in the sale, advertisement and distribution of this product.

### 1. Strict Liability For Failure To Warn Runs To Distributors

Defendant McKesson is subject to strict liability for its role in marketing, distributing, and selling the pharmaceutical product Avandia. Settled California law applies the doctrine of strict liability to manufacturers, distributors, and retailers alike for failure to provide a warning regarding a known or reasonably knowable danger from a pharmaceutical product. *Jimenez v. Superior Court of San Diego County* (2002) 29 Cal.4th 473, 476; *Cronin v. J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 130; *Canifax v. Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 52; *Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987. The Supreme Court of California has applied strict liability to all parties in the chain of distribution. The Court reasoned,

> Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. . . . Strict liability on the manufacturer and the retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of

- 8 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

> their continuing business relationship. *Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256, 262-63.

The Court extended this reasoning to apply to distributors. *Barth v. B.F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 252. McKesson, as a distributor, may therefore be held strictly liable for failure to warn.

Pharmaceutical distributors are subject to strict liability. Judge Chaney recently found *In re Vioxx Cases*, Case No. JCCP 4247, (Cal. Super. Ct, Los Angeles County, May 16, 2006) that pharmaceutical distributors are included in the general rule applied to all distributors. In her Revised Ruling on Request for Reconsideration, attached as Amy Eskin Declaration ("Eskin Decl.") Exhibit G, Judge Chaney overruled McKesson's demurrer to Plaintiff's cause of action for strict liability in connection with the medication Vioxx®. Judge Chaney reasoned "no California law supports Defendants' argument that distributors of prescription drugs should not be held strictly liable for injuries caused by their failure to warn of known or reasonably scientifically knowable risks. The only law nearly on point is to the contrary. In general, *the strict liability doctrine applies to those in the chain of distribution*." Eskin Decl., Exh. G (Revised Ruling) at 5 (citing *Vandermark*, 61 Cal.2d at 262-63) (emphasis added).

### 2. McKesson Is Not Exempt From Strict Liability Because The "Learned Intermediary" Doctrine Does Not Apply To Distributors

Contrary to GSK's claim, the doctrine of "learned intermediary"—which exempts physicians and pharmacies from strict liability—does not apply to a pharmaceutical distributor. California provides a narrow exception to the general rule that all parties in the chain of distribution are strictly liable for product defects: Under the doctrine of "learned intermediary," physicians and pharmacists are exempted from strict liability claims. *Fogo v. Cutter Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 754-55; *Murphy v. E.R. Squibb & Sons, Inc.* (1985) 40 Cal.3d 672; *San Diego Hosp. Assn. v. Superior Court of San Diego County* (1994) 30 Cal.App.4th 8, 14-15; *Cryolife, Inc. v. Superior Court of Santa Cruz County* (2003) 110 Cal.App.4th 1145, 1155.

- 9 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

But, the learned intermediary doctrine has *not* been extended to pharmaceutical distributors. *Murphy*, 40 Cal.3d. at 680-81. Thus, McKesson is not exempt from strict liability under California law.

Defendant GSK's claim that a pharmaceutical distributor is immune from strict liability under the learned intermediary doctrine is based on two cases, both of which GSK misconstrues. *See Brown v. Superior Court (Abbott Labs)* (1988) 44 Cal.3d 1049, 1061-62, n.9; *Carlin v. Superior Court (Upjohn Co.)* (1996) 13 Cal.4th 1104, 1116. Neither of these two cases makes any reference—either express or implied—to the learned intermediary doctrine as applied to distributors; both cases merely affirm the applicability of the "learned intermediary" to physicians. No California court has ruled in agreement with GSK's argument that the learned intermediary doctrine extends to pharmaceutical distributors, making them exempt from claims of strict liability.

As discussed above, neither case cited by GSK discusses pharmaceutical distributors—let alone extend the learned intermediary doctrine to them. Thus, there is no established law exempting pharmaceutical distributors from strict liability. Instead, it is settled law that the doctrine of strict liability *applies* to distributors.

C.  **REMOVAL OF THIS CASE IS COUNTER TO PRIOR RULINGS IN THE FEDERAL COURTS OF CALIFORNIA**

GlaxoSmithKline's claims of sham joinder and that McKesson can never be liable were raised recently in the Southern District of California by drug manufacturer Novartis Pharmaceuticals Corporation and rejected by The Honorable William Q. Hayes. Order Granting Plaintiff's Motion to Remand, Case No. 07CV852 WQH (JMA) (August 13, 2007), Eskin Decl. at Exhibit B. Judge Hayes addressed the issues of sham joinder and learned intermediary and granted remand, wholly refuting each argument made in the case at bar.

Other California courts, notably in the Central District, have granted remand based upon the same arguments herein raised. (See rulings in Reid, et al. v. Merck & Company, Inc., et al., Case No. CV 02-00504 NM (RZx) (Eskin Decl. at Exhibit C); Black, et al., v.

- 10 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Merck & Company, Inc., et al., Case No. CV 03-8730 NM (AJWx) (Eskin Decl. at Exhibit D); Albright, et al. v. Merck & Co., Inc., et al., No. CV 05-4025 JFW (MANx) (Eskin Decl. at Exhibit E); and Aaroe, et al v. Merck & Co. Inc., et al., No. CV05-5559 (Eskin Decl. at Exhibit F).

The arguments presented by Merck as relates to McKesson, in support of removal were previously rejected in Reid (Eskin Decl. at Exhibit C); Black (Eskin Decl. at Exhibit D); Albright (Eskin Decl. at Exhibit E); and Aaroe (Eskin Decl. at Exhibit F).

Further, as Judge Chaney in the California JCCP for Vioxx has ruled that joining McKesson was appropriate in the Vioxx cases, that should preclude the same argument here.

### D. REMOVAL IS IMPROPER BECAUSE THERE IS NO FEDERAL QUESTION NECESSARY FOR ADJUDICATION

GSK has failed to meet its burden to remove this action on federal question grounds. GSK has not shown that interpretation of a federal issue is necessary for adjudication of this case. In order for federal jurisdiction to attach the state law claim must necessarily state a contested federal issue, actually disputed and substantial, which a federal forum may then entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities. *Grable & Sons v. Darue Engineering & Manufacturing*, 125 S. Ct. 2363.

No interpretation of federal regulation is necessary to adjudicate Plaintiff's state tort claims against defendants. The FDA is without authority, either by statute or judicial ruling, to preempt applicable state tort remedies for claims of injury from pharmaceutical drugs. See *Carlin v. Superior Court*, 13 Cal.4th 1104, 1113. Defendant argues the FDA control of labeling and warnings of pharmaceutical drugs expressly preempts conflicting or contrary state law claims, suggesting that because some courts in some places have found preemption to preclude all state claims, the burden is met. This is untrue. FDA regulations do not expressly preempt common law tort remedies for failure to warn or occupy the entire field of regulation. Most courts in this country have not found state law to be preempted and that matter has found its way to the U.S. Supreme Court which has already heard a

- 11 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

medical device case, *Reigal v. Medtronic*, U.S. Supreme Court, Case No. 06-1249, one defective drug case, *Warner-Lambert Co. v. Kent.*, U.S. Supreme Court, Case No. 06-1498 (allowing plaintiffs to proceed with claim) and will be hearing a second defective drug case this year, *Wyeth v. Levine*, U.S. Supreme Court, Case No. 06-1249. To succeed, Defendants must convince this Court that there is no question that all causes of action in this case are, as a matter of law, either preempted or may only be brought in Federal Court. If that were so, the Supreme Court would have nothing to talk about. Having accepted certiorari, apparently there are some unsettled issues.

Nor has Congress shown any intention of preempting state tort liability for injuries from prescription drugs. ["[W]e find nothing in the federal scheme to support the assertion that manufacturers of prescription drugs and antibiotics who literally comply with [FDA regulations] must be immune from state tort liability for injuries caused by their products."]; *Abbot by Abbot v. American Cyanamid Co.* (4th Cir. 1988) 844 F.2d 1108, 1112 [federal law does not preempt imposition of state common law liability for failure to warn, despite the fact that labeling, "once approved, cannot be changed without FDA approval."]; *Mazur v. Merck & Co., Inc.* (E.D.Pa. 1990) 742 F.Supp. 239, 247 ["[M]ere compliance with an FDA suggestion, or for that matter, regulation or order, does not mean that state tort law becomes irrelevant.... [¶] ... State tort law is intended to supplement federal regulation ...."]; cf. *Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, ----, 116 S.Ct. 2240, 2243, 135 L.Ed.2d 700 (plur. opn. of Stevens, J.) [negligence and strict liability claims for failure to warn about risks of a medical device were not preempted by federal regulations].)

- 12 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

## VI. CONCLUSION

GSK's Notice of Removal is both procedurally deficient and legally insufficient to sustain removal. Therefore, Plaintiff respectfully requests this Court grant this Motion to Remand the action back to the state court in which it was properly brought.

DATED: March 10, 2008.

        HERSH & HERSH
        A Professional Corporation

        By_____
        AMY ESKIN
        Attorneys for Plaintiff

- 13 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND