NANCY HERSH, ESQ., State Bar No. 49091
MARK E. BURTON, JR., ESQ., State Bar No. 178400
RACHEL ABRAMS, ESQ., State Bar No. 209316
CYNTHIA BROWN, ESQ., State Bar No. 248846
HERSH & HERSH, A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6388
Telephone: (415) 441-5544

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHINDER KHANNA, | CASE NUMBER 3:08-CV-01131 MHP |
| Plaintiff, | **DECLARATION OF RACHEL ABRAMS IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND THIS CASE TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA** |
| vs. | |
| SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, MCKESSON PHARMACY SYSTEMS, and DOES ONE through FIFTEEN, inclusive, | Date: June 9, 2008 Time: 2:00 p.m. Ctrm: Courtroom 15, 18th Floor |
| Defendants. | Honorable Marilyn H. Patel |

I, RACHEL ABRAMS, declare as follows:

1.      I am an attorney at law admitted to practice before this Court in this matter, and I am a member of the law firm Hersh & Hersh, attorneys of record for the Plaintiff herein. I have personal knowledge of the facts set forth herein. If called upon, I could and would competently testify to the following from my own personal knowledge.

2.      Attached hereto as EXHIBIT "A" and incorporated herein by reference is a true and correct copy of *McKesson to Acquire Kelly/Waldron and KellyWaldron/SFA to Expand Marketing, Data Analysis and Sales Support Services for Pharmaceutical and*

HERSHANDHERSH
A Professional Corporation

*Biotechnology Manufacturers*, press release dated December 21, 1998, accessed at http://www.mckesson.com/en_usMcKesson.com/about%2BUs/Newsroom/Press%2BReleases/1998/McKesson%2Bto%2bAcquire%2BKelly%252FWaldron%2Band%2BKelly%2BWaldron%252FSFA%2Bto%2BExpand%2BMarketin%252C%2B12-21-1998.html on March 4, 2008.

    3.    Attached hereto as EXHIBIT "B" and incorporated herein by reference is a true and correct copy of Order Granting Plaintiff's Motion to Remand, <u>Maher v. Novartis Pharmaceuticals Corporation, et al.</u>, Southern District of California, Case No. 07CV852 WQH (JMA) (August 13, 2007).

    4.    Attached hereto as EXHIBIT "C" and incorporated herein by reference is a true and correct copy of Order Granting Plaintiff's Motion to Remand, <u>Reid, et al., v. Merck & Company, Inc., at al.</u>. Case No. CV 02-00504 NM (RZx), (C.D. Cal. March 26, 2002).

    5.    Attached hereto as EXHIBIT "D" and incorporated herein by reference is a true and correct copy of Order Granting Plaintiff's Motion to Remand, <u>Black, et al., v. Merck & Company, Inc. et al.</u>, Case No. CV 03-8730 NM (AJWx), (C.D. Cal. march 3, 2004).

    6.    Attached hereto as EXHIBIT "E" and incorporated herein by reference is a true and correct copy of Civil Minutes, <u>Albright, et al., v. Merck & Co., et al.</u>, Case No. CV 05-4025-JFW (MANx) (C.D. Cal. July 5, 2005).

    7.    Attached hereto as EXHIBIT "F" and incorporated herein by reference is a true and correct copy of Civil Minutes, <u>Aaroe, et al., v. Merck & Co., Inc., et al.</u>, Case No. CV 05-5559-jfw (CWx) (C.D. Cal. September 2, 2005).

    8.    Attached hereto as EXHIBIT "G" and incorporated herein by reference is a true and correct copy of Notice of Ruling (with Revised Ruling on Request for Reconsideration by Judge Victoria Chaney), filed on or about May 22, 2006, <u>Vioxx Cases</u>, California Superior Court for Los Angeles County, Case No. JCCP 4247.

    I declare under penalty of perjury, pursuant to the laws of the State of California,

DECLARATION OF RACHEL ABRAMS IN SUPPORT OF MOTION TO REMAND

HERSHANDHERSH
A Professional Corporation

1  that the foregoing is true and correct.

2      Executed on May 1, 2008, at San Francisco, California.

3

4                                    _____
                                     RACHEL ABRAMS
5

DECLARATION OF RACHEL ABRAMS IN SUPPORT OF MOTION TO REMAND

# EXHIBIT A

Home > About Us > Newsroom > Press Releases > 1998

## McKesson to Acquire Kelly/Waldron and Kelly Waldron/SFA to Expand Marketing, Data Analysis and Sales Support Services for Pharmaceutical and Biotechnology Manufacturers

December 21, 1998

Business Editors/Health & Medical Writers

SAN FRANCISCO--(BW HealthWire)--Dec. 21, 1998--McKesson Corporation (NYSE:MCK) announced today that it has entered into a definitive agreement to acquire Kelly/Waldron and Kelly Waldron/SFA.

Kelly/Waldron provides sales, data analysis and marketing information services to the pharmaceutical industry. Kelly Waldron/ SFA provides sales force automation systems and services for pharmaceutical sales forces.

Both companies are privately owned and are projected to have combined revenues of about $25 million for the year ending Dec. 31, 1998, with projected growth rates of about 50 percent per year.

Kelly/Waldron offers a broad array of decision support, marketing research, data analysis and sales and marketing services which enable pharmaceutical and biotechnology manufacturers to more cost-effectively market their products to physicians, nurses, physician assistants, other medical professionals and consumers.

These services include return-on-investment studies of promotional activities, developing and implementing direct marketing programs, database processing and management, sales force detailing support and providing proprietary marketing list data. Kelly/Waldron is one of only ten licensees to the American Medical Association master database of all U.S. physicians.

Kelly Waldron/SFA sells and services a version of IMS HEALTH Strategic Technologies Inc.'s Cornerstone(TM) to pharmaceutical sales forces. Cornerstone is the most widely used sales force automation system, with more than 35,000 users worldwide.

Kelly Waldron/SFA also markets a handheld personal computer for use by pharmaceutical field forces for call and sample tracking, electronic signature capture, sample management and compliance.

Kelly Waldron/SFA also markets Dynastrat(R) a data mining software tool designed specifically for segmentation analysis, promotional activity impact, ROI measurement, physician targeting, forecasting and field sales force optimization and planning.

"These acquisitions further expand the scale and range of McKesson's service offerings to our pharmaceutical and biotechnology manufacturing partners," said Robert Glaser, president, McKesson Pharmaceutical Services Division, to whom the principals of Kelly/Waldron and Kelly Waldron/SFA each will report.

"They follow the recently completed acquisition of J. Knipper, and, like J. Knipper, will be integrated into our suite of solutions for our manufacturer partners which also includes services from McKesson Healthcare Delivery Systems and McKesson BioServices. Like these other businesses, Kelly/Waldron's customers include a number of the world's largest pharmaceutical companies.

"This customer base is a network from which we can leverage relationships to cross-sell complementary products and services. The addition of Kelly/Waldron and Kelly Waldron/SFA also will support the development of new initiatives such as our direct-to-consumer support services and patient registries."

"In addition, the Kelly/Waldron product offering will be further enhanced by the linkage of data resulting from the pending McKesson HBOC merger," Glaser continued. "We will be in a position to provide compelling data to assist our manufacturing partners in developing and executing outcome studies, Phase IV trials and other cost-effectiveness programs to improve manufacturer market share and clinical outcomes."

Terms of the transactions were not disclosed. Closing is expected in McKesson's fourth fiscal quarter ending Mar. 31, 1999, subject to the expiration or earlier termination of the waiting period under the Hart-Scott-Rodino Act and other customary conditions.

The acquisition will be accounted for as a pooling of interests, and is anticipated to be non-dilutive in the current fiscal year before one-time charges, cost savings and synergies.

The McKesson Pharmaceutical Services Division includes McKesson Healthcare Delivery Systems, J. Knipper and McKesson BioServices. McKesson Healthcare Delivery Systems is a leading supplier of marketing support programs, reimbursement services, patient assistance programs and specialty distribution systems to pharmaceutical, biotechnology and medical device manufacturers based on its expertise in advanced health care information technology and world-class customer service.

J. Knipper provides the health care industry with salesforce distribution services, database development, response processing, priority recall services, sample fulfillment and direct-to-consumer (DTC) and direct-to-patient (DTP) communications support.

McKesson BioServices provides biomedical support services to the pharmaceutical and biotechnology industries, U.S. government, universities and institutions, and contract research organizations. Pharmaceutical Services manufacturer programs include Patient Care Enhancing Programs(SM) a series of patient programs designed to ensure patient compliance with appropriate pharmaceutical therapy.

On Oct. 18, 1998, McKesson and HBO & Company (Nasdaq:HBOC), the nation's leading healthcare information company, announced that the two companies had signed an agreement for McKesson to acquire HBOC, creating the first comprehensive healthcare supply management and information solutions company.

Terms of the merger call for each HBOC shareholder to receive 0.37 shares of McKesson common stock for each share of HBOC stock in a tax-free exchange. The waiting period has expired under the Hart-Scott-Rodino Antitrust Improvement Acts of 1976 for their proposed merger.

As a result, the two companies are free to complete their merger, subject to the approvals of McKesson and HBOC stockholders at meetings scheduled for Jan. 12, 1999, and the satisfaction or waiver of certain other customary closing conditions. The merger will be accounted for as a pooling of interests.

McKesson Corporation, a Fortune 100 company, is the leading health care supply management company in North America through its U.S. Health Care businesses; its Canadian subsidiary, Medis Health and Pharmaceutical Services; and its interest in Nadro of Mexico.

The company also owns McKesson Water Products, one of the nation's largest providers of bottled drinking water. More information about McKesson can be obtained on the World Wide Web at: http://www.mckesson.com.

Except for the historical information contained herein, the matters discussed in this press release may constitute forward-looking statements that involve risks and uncertainties that could cause actual results to differ materially from those projected. These statements may be identified by their use of forward-looking terminology such as "believes," "expects," "may," "should," "intends," "plans," "estimates," "anticipates" and similar words. Risks and uncertainties include the speed of integration of acquired businesses, the impact of continued competitive pressures, success of strategic initiatives, implementation of new technologies, continued industry consolidation, changes in customer mix, changes in pharmaceutical manufacturers' pricing and distribution policy, the changing U.S. health care environment and other factors discussed from time to time in the Company's reports filed with the Securities and Exchange Commission. The Company assumes no obligation to update information contained in this release.

McKesson news releases are available at no charge through McKesson's NewsOnDemand fax service. To immediately receive an index of available releases, call 800/344-6495 and press 2.

# EXHIBIT B

1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | ELIZABETH MAHER,

CASE NO. 07CV852 WQH (JMA)

12 | Plaintiff,

ORDER GRANTING PLAINTIFF'S
MOTION TO REMAND

vs.

13 | NOVARTIS PHARMACEUTICALS

14 | CORPORATION, et al.,

15 | Defendants.

16 | HAYES, Judge:

17 |     Pending before the Court is Plaintiff's motion to remand to state court. (Docs. #11). The

18 | Court finds this matter suitable for submission on the papers without oral argument pursuant to Civil

19 | Local Rule 7.1(d)(1).

## BACKGROUND

20

21 |     On March 23, 2007, Plaintiff Elizabeth Maher (Plaintiff) filed a Complaint in the Superior

22 | Court of California against Defendants Novartis Pharmaceuticals Corporation (Novartis), Novartis

Corporation[1] and McKesson Corporation (McKesson). Notice of Removal (Doc. # 1), ¶ 1. The

23 | Complaint alleges state law claims against Novartis and McKesson for injuries sustained by Plaintiff

24 | when Plaintiff ingested the prescription drug Tegretol, an anti-seizure medication. Notice of Removal,

25 | Ex. 1 (Complaint), ¶ 3. Specifically, the Complaint alleges state law claims for (1) strict products

26

27

28 |     [1] Plaintiff voluntarily dismissed Defendant Novartis Corporation on June 11, 2007. (Doc. #
10).

- 1 -

07CV852 WQH (JMA)

1  liability, (2) common law fraud, (3) negligence, (4) negligent misrepresentation, (5) misrepresentation,

2  (6) express warranty, (7) implied warranty, and (8) violations of the California Business & Professions

3  Code. Compl., ¶¶ 42-70.

4       Plaintiff is a resident of the State of California. Notice of Removal, ¶ 4; Compl., ¶ 2.

5  Defendant Novartis is a Delaware corporation with its principal place of business in the State of New

6  Jersey. Compl., ¶ 4; Notice of Removal, ¶ 5. Plaintiff alleges that Novartis, "[a]t all times relevant

7  . . . was in the business of designing, testing, manufacturing, labeling, advertising, marketing,

8  promoting, selling and distributing pharmaceuticals, including Tegretol, and other products for use

9  by the mainstream public, including Plaintiff." Compl., ¶ 10. Defendant McKesson is a Delaware

10  corporation with its principal place of business in the State of California. Compl., ¶ 7; Notice of

11  Removal, ¶ 7. Plaintiff alleges that McKesson, "[a]t all times relevant . . . was in the business of

12  labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including

13  Tegretol, and other products for use by the mainstream public, including Plaintiff." Compl., ¶ 11.

14       Plaintiff alleges that Defendants Novartis and Mckesson, or their representatives,

15  "manufactured, marketed, distributed and sold" Tegretol to Plaintiff. Compl., ¶ 13. Plaintiff further

16  alleges that Defendants Novartis and McKesson knew that Tegretol was a dangerous drug and failed

17  to adequately warn physicians and patients about its dangers. Compl., ¶ 17. Plaintiff alleges that

18  Defendants made false statements about Tegretol and improperly promoted the Tegretol taken by

19  Plaintiff for off-label uses. Compl., ¶ 19.

20       On April 11, 2007, Plaintiff served Defendant Novartis with the Complaint. Notice of

21  Removal, ¶ 2. On May 11, 2007, Novartis filed Notice of Removal pursuant to 28 U.S.C. § 1441(b).

22  Notice of Removal (Doc. # 1). The Notice of Removal asserts diversity jurisdiction and contends that

23  the citizenship of Defendant McKesson is irrelevant because McKesson is a sham Defendant

24  fraudulently joined. Notice of Removal, ¶ 7. The amount in controversy exceeds $75,000. Notice

25  of Removal, ¶¶ 9-10; Compl., ¶ 75, 84, 87-88.

26       On June 1, 2007, Plaintiff moved to remand for lack of subject matter jurisdiction. (Docs. #

27  8, 11).

28  /

07CV852 WQH (JMA)

**STANDARD OF REVIEW**

"A federal court can exercise removal jurisdiction over a case only if it would have had jurisdiction over [the case] as originally brought by the plaintiff." *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977); *see also* 28 U.S.C. § 1441. Removal based on diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see also* 28 U.S.C. § 1332. Removal is not permitted where one of the defendants "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

The party seeking removal has the burden of establishing federal jurisdiction, *Holcomb v. Bingham Toyota,* 871 F.2d 109, 110 (9th Cir. 1989), and there is a "strong presumption against removal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006), *citing Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). In determining the existence of removal jurisdiction, a court may ignore a "fraudulently joined" defendant. *Morris v. Princess Cruise Lines*, 236 F.3d 1061, 1067-68 (9th Cir. 2001). "Fraudulent joinder is a term of art"–when a "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

A district court evaluating fraudulent joinder properly considers the allegations of the complaint and any evidence submitted by the parties showing the joinder is fradulent. *Ritchey v. UpJohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe,* 811 F.2d at 1339. "All disputed questions of fact and all ambiguities in the controlling state law" must be resolved in favor of the non-removing party, and "any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand." *Aaron,* CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, *5-6 (C.D. Cal. July 26, 2005); *see also Little v. Purdue Pharma, LP*, 227 F. Supp. 2d 838, 849 (S.D. Ohio 2002) ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts.").

**DISCUSSION**

Plaintiff moves for remand to state court for lack of federal subject matter jurisdiction. Plaintiff, a citizen of the State of California, contends that there is no diversity jurisdiction because Defendant McKesson is a legitimate defendant with its place of business in the State of California. Plaintiff contends that a distributor such as Defendant McKesson is liable under California law if it fails to properly warn physicians and patients of a prescription drug's dangerous propensities.

Defendant Novartis contends that Plaintiff has not and cannot state a claim against Defendant McKesson under California law. Defendant Novartis asserts that Defendant McKesson is fraudulently joined in this action to defeat diversity and that removal is proper based on diversity jurisdiction when one ignores Defendant McKesson's citizenship. Defendant Novartis contends that Defendant McKesson is "fraudulently joined to this action as a 'sham' defendant" and "there is no possible way that Plaintiff can prove a cause of action against McKesson." Notice of Removal, ¶ 7. Defendant Novartis contends that a distributor of prescription drugs cannot be held liable for damages in a products liability claim under California law and that the learned intermediary doctrine precludes Plaintiff from stating a claim against Defendant McKesson. Defendant Novartis explains that Plaintiff's claims of inadequate warning, negligence, fraud, negligent misrepresentation and misrepresentation against Defendant McKesson are not viable because a distributor of prescription drugs has no duty to warn under California law.

The general rule under California law is that both a manufacturer and a distributor can be strictly liable for injuries caused by a defective product. *Bostick v. Flex Equipment Co.*, 147 Cal. App. 4th 80, 88 (2007); *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 994 (1991); *see also Daly v. General Motors Corp.*, 20 Cal. 3d 725, 739 (1978); *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262-63 (1964). In *Brown v. Superior Court*, 44 Cal. 3d 1049 (1988), the California Supreme Court examined strict liability for drug manufacturers and concluded that "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* at 1069. In prescription drug cases, liability under California state law is premised on a defendant's failure to

1    warn of knowable risks.[2] *Id.* The California Supreme Court has recognized an exception in strict

2    liability for pharmacists in prescription drug cases, *see Murphy v. E.R. Squibb & Sons, Inc.*, 40

3    Cal. 3d 672, 681 (1985)[3], however, it has not addressed liability in prescription drug cases for

4    distributors and other potential defendants in the "commercial chain." *Daly*, 20 Cal. 3d at 739

5    ("Regardless of the identity of a particular defendant or of his position in the commercial chain the

6    basis of his liability remains that he has marketed or distributed a defective product."). Defendant

7    Novartis contends that Plaintiff cannot maintain her claims against Defendant McKesson because

8    the principles that the California Supreme Court relied upon to explain liability for drug

9    manufacturers in *Brown* and to create an exception in strict liability for pharmacists in prescription

10   drug cases apply to prevent recovery against distributors in products liability cases involving

11   prescription drugs. Defendant's Opp. To Mot. To Remand at 3-6.

12        In the context of fraudulent joinder, a number of federal district courts have addressed

13   whether a California distributor can be liable in a prescription drug case for failure to warn, and

14   concluded that distributor defendants were not fraudulently joined because a distributor could

15   possibly be liable for failure to warn in prescription drug cases under California law. *See Aaron*,

16   CV 05-4073-JFW (MANx), 2005 U.S. Dist. LEXIS 40745, *8 (C.D. Cal. July 26, 2005)

17   (defendant failed to meet heavy burden of demonstrating that there is no possibility that plaintiffs

18   will be able to prevail); *Black*, CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, *13-14

19   (C.D. Cal. Mar. 3, 2004) (defendant failed to meet heavy burden to show "absolutely no

20   possibility" that plaintiffs could prevail); *Martin*, No. S-05-750, 2005 WL 1984483, *3-4 (E.D.

21   Cal. Aug. 17, 2005) (defendant failed to meet heavy burden to show to a near certainty that cause

22   of action is precluded under California law); *see also Becraft v. Ethicon*, No. C 00-1474 CRB,

23   2000 U.S. Dist. LEXIS 17725 (N.D. Cal. Nov. 2, 2000) (concluding that a distributor can be liable

24   _____

25   [2] Though the rule articulated in *Brown* uses the words "strict liability," the California Supreme
     Court noted that the rule "rings of negligence" and distinguished the rule from pure strict liability.

26   *Brown*, 44 Cal. 3d at 1058-59. The Court concluded that "a drug manufacturer's liability for a
     defectively designed drug should not be measured by the standards of strict liability." *Id.* at 1061.

27   [3] The California Supreme Court created the pharmacy exception articulated in *Murphy* and
     applicable in strict liability cases before it decided *Brown* and held that there was no pure strict

28   liability in prescription drug cases, only a hybrid (negligence/strict liability) form of liability for
     failure to warn. *Brown*, 44 Cal. 3d at 1058-1061.

1 under California law for defective sutures); *but see Aronis v. Merck*, NO. CIV. S-05-0486 WBS

2 DAD, 2005 U.S. Dist. LEXIS 41531, *3 (E.D. Cal. May 3, 2005) (plaintiff did not state claim

3 against distributor under California law because plaintiff failed to allege causal connection);

4 *Skinner v. Warner-Lambert Co.*, Case No CV-03-1643-R (Rzx) (C.D. Cal. Apr. 28,

5 2003)(distributor of prescription drugs is not subject to strict liability). On or about May 22, 2006,

6 a California State Superior Court Judge refused to exempt distributors from strict liability in a

7 prescription drug case involving the drug Vioxx. The Superior Court Judge stated "Defendants

8 point to no authority that makes an exception to the doctrine of strict liability for distributors in an

9 industry analogous to the prescription pharmaceutical industry. This court will not be the first to

10 make such an exception at the pleading stage." *See Declaration of Robert Clarke in Support of*

11 *Plaintiff's Motion to Remand*, Ex. 3 at 40-49 (*In re Vioxx Cases*, Case No. JCCP 4247 "Revised

12 Ruling on Request for Reconsideration," May 16, 2006)

13       The general rule under California law is that distributors and other "participants in the

14 chain of distribution" are strictly liable in defective products cases. *Bostick*, 147 Cal. App. 4th at

15 88. This Court has been unable to find, nor has either party cited, a case under California law

16 which creates an exception in strict liability for distributors in prescription drug cases. This Court

17 cannot conclude that it is obvious that the general rule of distributor liability does not apply under

18 the allegations in this case. *McCabe*, 811 F.2d at 1339. The Court further concludes that the

19 learned intermediary doctrine does not prevent Plaintiff from stating a claim against McKesson

20 because Plaintiff has alleged that McKesson failed to properly warn physicians, including

21 Plaintiff's physician. *Brown*, 44 Cal. 3d at 1062; *see also Carlin v. Superior Court*, 13 Cal. 4th

22 1104, 1118 (1996).

23       In the Complaint, Plaintiff alleges that Defendant McKesson distributed, promoted,

24 labeled, and marketed Tegretol to Plaintiff, and that Plaintiff was injured when she used Tegretol.

25 Plaintiff further alleges that Defendant McKesson knew that Tegretol was dangerous, yet failed to

26 warn physicians and patients of the drug's dangerous propensities. The Court concludes that it is

27 not "obvious" that Plaintiff has failed to state a claim against Defendant McKesson under settled

28 California law, *McCabe*, 811 F.2d at 1339, and that Defendant Novartis has not met its "heavy

1    burden" to show that McKesson has been fraudulently joined. *Plute v. Roadway Package Sys.,*

2    *Inc.,* 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001; *see also Black,* CV 03-8730 NM (AJWx), 2004

3    U.S. Dist. LEXIS 29860, *13-14 (C.D. Cal. Mar. 3, 2004), *citing Purdue Pharma, LP,* 227 F.

4    Supp. 2d at 849 ("a federal court should hesitate before pronouncing a state claim frivolous,

5    unreasonable, and not even colorable in an area yet untouched by the state courts."). Accordingly,

6    this matter is remanded to state court.

7                                **CONCLUSION**

8          IT IS HEREBY ORDERED that (1) Plaintiff's motion to remand (Doc. # 11) to state court

9    is GRANTED; (2) Defendant's evidentiary objections are DENIED as moot; and (3) this case is

10    hereby remanded to the California Superior Court.

11    DATED:  August 10, 2007

12                                    *William Q. Hayes*

13                                **WILLIAM Q. HAYES**
                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07CV852 WQH (JMA)

# EXHIBIT C

Case 3:02-cv-00504-NMRZ    Document 23    Filed 03/26/2007    Page 1 of 7

Priority
Send          ☒
Enter         ☒
Closed        ☒
JS-5/JS-6     ☒
JS-2/JS-3
Scan Only___

FILED
CLERK, U.S. DISTRICT COURT

03-26-02

MAR 26 2002

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

Docketed
Copies / NTC Sent
JS-5 / JS-6
JS-2 / JS-3
CLSD

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SHARON REID, as an individual, on
behalf of herself and all others
similarly situated; MYRON CARUSO,
as an individual,

    Plaintiffs,

    v.

MERCK & COMPANY, INC., a
corporation, et al.,

    Defendants.

CASE NO. CV 02-00504 NM (RZx)

ORDER GRANTING PLAINTIFFS'
MOTION TO REMAND

ENTERED
CLERK, U.S. DISTRICT COURT

03-27-02

MAR 27 2002

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

## I. INTRODUCTION

On July 23, 2001 plaintiffs Sharon Reid and Myron Caruso filed a
complaint in Los Angeles Superior Court against defendants Merck & Company,
Inc. ("Merck"), Century Beverly Hills Pharmacy, Neighbor Care Pharmacy, Good
Samaritan Medical Pharmacy (collectively, "the pharmacy Defendants"), and
various doe defendants, asserting claims for strict liability, negligence, breach of
express and implied warranty, deceit by concealment, negligent misrepresentation,
and violation of California Business and Professions Code sections 17200 and
17500.  On January 17, 2002 Merck removed the case under 28 U.S.C. § 1441(b)
based on diversity, asserting that the non-diverse pharmacy Defendants were
fraudulently joined.  See Notice of Removal at 4.

Now pending before the court is Plaintiffs' motion to remand.

EXHIBIT 4
-51-

## II. RELEVANT FACTUAL BACKGROUND

Plaintiffs are individuals who have been prescribed and supplied with the prescription drug "Vioxx," and, as a consequence of ingesting the same, allegedly have suffered "dangerous, severe and life-threatening side effects," including edema, changes in blood pressure, and cardiovascular problems. Compl. ¶ 1. Plaintiffs allege that Defendants have aggressively marketed and sold Vioxx as an effective pain reliever, while purposefully downplaying and understating the drug's known health hazards and risks. See Compl. ¶¶ 23, 28, 31.

## III. DISCUSSION

### A. Legal Standard

For removal to be valid based on diversity, 28 U.S.C. § 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). However, one exception to the requirement of complete diversity is when a non-diverse defendant has been "fraudulently joined" for the purpose of defeating diversity jurisdiction. See id. "Fraudulent joinder" is a term of art and does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive. See id.; see also DaCosta v. Novartis AG, 180 F. Supp. 2d 1178, 1181 (D. Or. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." Morris, 236 F.3d at 1067 (internal quotation marks omitted).

A defendant seeking removal to federal court "is entitled to present the facts showing the joinder to be fraudulent." McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). To resolve fraudulent joinder claims, the court may look beyond the pleadings and consider evidence similar to that offered in

2

EXHIBIT 4
-52-

1    summary judgment proceedings, such as affidavits and deposition testimony.

2    DaCosta, 187 F. Supp. 2d at 1181.

3        There is a presumption against finding fraudulent joinder, and defendants

4    asserting that plaintiff has fraudulently joined a party carry a heavy burden of

5    persuasion.  Plute v. Roadway Package System, 141 F. Supp. 2d 1005, 1008 (N.D.

6    Cal. 2001); see also Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709,

7    712 n.3 (9th Cir. 1990).  Courts have denied claims of fraudulent joinder when

8    there is any possibility that a plaintiff may prevail on the cause of action against

9    the in-state defendant.  Plute, 141 F. Supp. 2d at 1008; see also Cavallini v. State

10   Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995) ("The removing party

11   must prove that there is absolutely no possibility that the plaintiff will be able to

12   establish a cause of action against the in-state defendant in state court.") (internal

13   quotation marks omitted).  "In determining whether a defendant was joined

14   fraudulently, the court must resolve 'all disputed questions of fact and all

15   ambiguities in the controlling state law in favor of the non-removing party.'"

16   Plute, 141 F. Supp. 2d at 1008 (quoting Dodson v. Spiliada Maritime Corp., 951

17   F.2d 40, 42-43 (5th Cir. 1992)).    Furthermore, any doubts concerning the

18   sufficiency of a cause of action due to inartful, ambiguous or technically defective

19   pleading must be resolved in favor of remand, and a lack of clear precedent does

20   not render the joinder fraudulent.  Plute, 141 F. Supp. 2d at 1008; see also

21   Archuleta v. Am. Airlines, Inc., 2000 WL 656808, at *4 (C.D. Cal. 2000) (citing

22   Gaus v. Miles, Inc., 980 F.2d 565, 566-67 (9th Cir. 1992)).

23

24                              B. Application

25       Plaintiffs argue removal was improper and remand is necessary because

26   complete diversity of citizenship does not exist.  Merck contends that the

27   pharmacy Defendants were fraudulently joined for the sole purpose of defeating

28   diversity of citizenship, and that, consequently, the pharmacy Defendants must be

3

EXHIBIT 4
-53-

1   ignored for diversity jurisdiction purposes.

2         It is undisputed that Plaintiffs are residents of California.  As Merck

3   produces uncontradicted extrinsic evidence to show that Neighbor Care Pharmacy

4   is not a California resident, and as the complaint alleges no causes of action

5   against Good Samaritan Medical Pharmacy, the court addresses only whether

6   Century Beverly Hills Pharmacy, undisputedly a California resident, was

7   fraudulently joined.  See Isetti Decl. ¶ 3 (Neighbor Care is Delaware corporation

8   with principal place of business in Pennsylvania); see also Bond Decl. ¶ 3

9   (Neighbor Care's office in Cerritos, California, does not sell drugs to, or otherwise

10  interface with, patients).

11        Plaintiffs assert four causes of action against Century Beverly Hills

12  Pharmacy: negligence, deceit by concealment, violation of California Business &

13  Professions Code 17200, and violation of California Business & Professions Code

14  17500.[1]  To prove fraudulent joinder, Merck must establish that settled California

15  law precludes these causes of action against Century Beverly Hills Pharmacy.  In

16  its opposition, Merck argues that each of these causes of action is premised upon a

17  duty to warn, and that jurisdictions from across the country have rejected

18  imposition of such a duty on pharmacists pursuant to the "learned intermediary"

19  doctrine.  See Opp. at 9-10.  Merck urges this court to follow the reasoning set

20  forth in various non-binding cases by rejecting such a duty here, and sets forth

21  various policy arguments in support of its position.  See Opp. at 10-13.

22        However, Merck concedes that "California courts have not yet decided the

23  specific issue of whether the learned intermediary doctrine precludes the

24  _____

25        [1] Plaintiffs also assert a cause of action for "strict liability - failure to warn" against

26  Century Beverly Hills Pharmacy.  See Compl. ¶¶ 34-37.  However, in their moving

27  papers, Plaintiffs concede that pursuant to Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.
    3d 672 (1985), pharmacists are not subject to strict liability.  See Mot. at 9.  Accordingly,

28  the court does not consider this cause of action for purposes of the motion to remand.

4

EXHIBIT 4
-54-

1   imposition of a duty to warn on pharmacists . . . ." See Opp. at 10. Indeed, in

2   1985 the California Supreme Court left open the question whether a pharmacist

3   may be held negligent for alleged defects in a product. See Murphy v. E. R.

4   Squibb & Sons, Inc., 40 Cal. 3d 672, 675 (1985) ("We will decide whether a

5   pharmacy at which the drug was purchased may be held strictly liable for alleged

6   defects in the product (as distinguished from ordinary negligence) . . . .")

7   (parenthetical in original). Other California cases suggest that as service

8   providers, pharmacists may be held liable under negligence theories. See, e.g.,

9   Gagne v. Bertran, 43 Cal. 2d 481, 489 (1954) ("The services of experts are sought

10  because of their special skill. They have a duty to exercise the ordinary skill and

11  competence of members of their profession, and a failure to discharge that duty

12  will subject them to liability for negligence."); see also Pierson v. Sharp Mem'l

13  Hosp., 216 Cal. App. 3d 340, 345 (1989) (defining pharmacists as service

14  providers); Murphy, 40 Cal.3d at 676 ("those who sell their services for the

15  guidance of others . . . are not liable in the absence of negligence or intentional

16  misconduct.") (internal quotation marks omitted).

17         In the absence of binding California authority establishing that pharmacies

18  may not be held liable for violation of a "duty to warn," the court cannot rule as a

19  matter of law that there is "absolutely no possibility" Plaintiffs could prevail on

20  their causes of action against Century Beverly Hills Pharmacy. See Cavallini, 44

21  F.3d at 259; Plute, 141 F. Supp. 2d at 1012 (in absence of binding California law

22  establishing that plaintiff could not prevail on retaliation claims against defendant

23  supervisors, defendant did not meet its burden of showing that supervisors were

24  fraudulently joined). Consequently, Merck does not meet its heavy burden of

25  demonstrating that Century Beverly Hills Pharmacy was fraudulently joined, and

26  the matter must be remanded because complete diversity of citizenship is lacking.

27  See Plute, 141 F. Supp. 2d at 1011 ("FedEx's policy-based and statutory

28  construction arguments demonstrate that FedEx cannot meet the standard for

EXHIBIT 4
-55-

1  fraudulent joinder: FedEx has not demonstrated that *settled* California law

2  precludes Plute from suing his former supervisors for retaliation.") (emphasis in

3  original).

4      Merck also argues the complaint does not attribute wrongdoing to the

5  particular defendant pharmacies, and that the conclusory allegations are

6  insufficient to destroy diversity. See Opp. at 18-19. As stated above, any doubts

7  concerning the sufficiency of a cause of action due to inartful, ambiguous or

8  technically defective pleading must be resolved in favor of remand. Plute, 141 F.

9  Supp. 2d at 1008. In the complaint Plaintiffs allege that the pharmacy Defendants

10  "were engaged in the business of prescribing, formulating, distributing, supplying

11  and selling Vioxx." Compl. ¶ 11. Plaintiffs further allege that "Defendants and

12  each of them purposefully downplayed and understated the health hazards and

13  risks associated with Vioxx," that Defendants "intentionally concealed and

14  suppressed the true facts concerning said pharmaceutical products with the intent

15  to defraud Plaintiffs, in that Defendants knew that . . . Plaintiffs would not have

16  used the subject products, if they wee aware of the true facts concerning the

17  dangers of said product. Compl ¶ ¶ 31, 62; see also id. ¶ 74c (Defendants

18  "purposely downplay[ed] and understat[ed] the health hazards and risks associated

19  with Vioxx"); id. ¶ 76 ("Defendants have been unjustly enriched by receipt of

20  hundreds of millions of dollars in ill-gotten gains from the sale and prescription of

21  said drugs in California, sold in large part as a result of the acts and omissions

22  described herein."). Given the liberal pleading requirements, the general

23  allegations against "Defendants" are sufficient to charge the pharmacy Defendants

24  with the alleged wrongful conduct. See Plute, 141 F. Supp. 2d at 1010 n.4; see

25  also Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994)

26  (courts must interpret general allegations to "embrace whatever specific facts

27  might be necessary to support them."); see also Archuleta, 2000 WL 656808, at *9

28  ("The court's task on the present motion [to remand] is not to evaluate whether the

6

EXHIBIT 4
-56-

1    acts of [defendants] were sufficiently pervasive that [plaintiff] will prevail on his

2    harassment claim.  Rather, it is to determine whether he has so obviously failed to

3    state a claim under California law that his joinder of the two defendants is

4    fraudulent for jurisdictional purposes.").  In light of the above, Merck's additional

5    argument that Plaintiffs' fraud claim lacks the requisite specificity in pleading

6    would be better addressed to the state court.

7

8                           **IV.  CONCLUSION**

9        For the reasons set forth above, the court <u>grants</u> Plaintiffs' motion to remand

10   this action to the Los Angeles Superior Court.

11

12

13

14   DATED: March 25, 2002

15

16

17                    Nora M. Manella
                       United States District Judge

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 4
-57-

# EXHIBIT D



ENTERED
CLERK, U.S. DISTRICT COURT

MAR - 5 2004

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

_____ Priority
_____ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT

MAR - 3 2004

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

TIMOTHY BLACK, et. al.,

                Plaintiffs,

        v.

MERCK & COMPANY, INC., a
corporation; MCKESSON
CORPORATION, a corporation; and
DOES 1-100, inclusive,

                Defendants.

CASE NO. CV 03-8730 NM (AJWx)

ORDER GRANTING PLAINTIFFS'
MOTION TO REMAND

## I. INTRODUCTION

On November 25, 2003, 35 plaintiffs residing in 20 states, including California but not including New Jersey ("Plaintiffs"), sued Merck & Company, Inc. ("Merck"), McKesson Corporation ("McKesson"), and Does 1-100, inclusive (collectively, "Defendants"), in Los Angeles Superior Court.[1] Thirty-two of the Plaintiffs allege they were injured by taking VIOXX, a prescription drug; the

---

[1] Local Rule 19-1 provides that "[n]o complaint or petition shall be filed that includes more than ten (10) Doe or fictitiously named parties."

EXHIBIT 5

1   remaining three plaintiffs allege loss of consortium. Compl. ¶¶ 13-47.[2]

2        On December 1, 2003, Merck removed the case based on diversity. Merck

3   is incorporated in and has its principal place of business in New Jersey. Id. ¶ 49.

4   McKesson is incorporated in Delaware and has its principal place of business in

5   California. Notice of Removal ¶ 12; Mot. at 1. Merck asserts that diversity

6   jurisdiction exists because the only non-diverse defendant named in the

7   Complaint, McKesson, was fraudulently joined. Notice of Removal ¶ 8; Mot. at 1.

8   In the alternative, Merck argues the court should extend the doctrine of fraudulent

9   joinder to apply where plaintiffs were misjoined. Mot. at 11-12. Merck contends

10  that because the four California plaintiffs were misjoined, the court should

11  disregard their citizenship and sever them from the case. Id. Now pending is

12  Plaintiffs' Motion to Remand on the grounds that: (1) diversity jurisdiction is

13  lacking, and (2) Merck's request to sever the California plaintiffs is contrary to

14  law and to standards of efficiency.

15

16                            **II. FACTS**

17        Merck, a pharmaceutical company, tested, manufactured, marketed, labeled,

18  and distributed VIOXX. Compl. ¶¶ 48-49. Merck sells VIOXX to wholesale

19  distributors, hospitals, pharmacies, and other suppliers of prescription drugs.

20  Layton Decl. ¶¶ 2-3. McKesson, a wholesale distributor, promoted and distributed

21  VIOXX. Id. ¶ 3; Compl. ¶ 50. Currently, Merck sells VIOXX to approximately

22  33 wholesalers (including McKesson), 1,000 hospitals, 1,500 small pharmacies,

23

24  _____

25       [2] Plaintiffs allege thirteen claims: (1) strict liability for failure to warn;
     (2) negligence; (3) negligence per se; (4) breach of implied warranty; (5) breach of

26  express warranty; (6) deceit by concealment; (7) negligent misrepresentation;

27  (8) violation of Cal. Bus. & Prof. Code § 17200; (9) violation of Cal. Bus. & Prof. Code
     § 17500; (10) violation of Cal. Civ. Code § 1750; (11) wrongful death; (12) survival

28  action; and (13) loss of consortium.

                                    2

EXHIBIT 5

1   and three warehouse chain pharmacies. Layton Decl. ¶ 3.

2         VIOXX is a prescription drug used for the treatment of painful menstrual

3   cramps, the management of acute pain in adults, and the relief of signs and

4   symptoms of osteoarthritis. Compl. ¶ 55. VIOXX has allegedly been linked to

5   several severe and life threatening medical disorders including, but not limited to,

6   edema, changes in blood pressure, heart attacks, strokes, seizures, kidney and liver

7   damage, pregnancy complications, and death. Id. ¶ 58. Plaintiffs allege these

8   risks were not disclosed to them. Id. Plaintiffs further allege Defendants

9   aggressively marketed their product through advertisements and other promotional

10  materials while misleading potential users and failing to protect consumers from

11  serious dangers of which Defendants knew or should have known. Id. ¶¶ 59-64.

12

13                          **III. DISCUSSION**

14                       **A. Fraudulent Joinder**

15        For removal based on diversity, 28 U.S.C. § 1332 requires complete

16  diversity of citizenship. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th

17  Cir. 2001) (citation omitted). Even if the complete diversity requirement is met,

18  removal is not allowed where one of the defendants is a "citizen of the State in

19  which such action is brought." 28 U.S.C. § 1441(b).[3] But if the plaintiff "fails to

20  state a cause of action against a resident defendant, and the failure is obvious

21  according to the settled rules of the state, the joinder of the resident defendant is

22  fraudulent." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)

23  (citation omitted). "Fraudulent joinder" is a term of art and does not impugn the

24  integrity of plaintiffs or their counsel and does not refer to an intent to deceive.

25  Id.; DaCosta v. Novartis AG, 180 F. Supp. 2d 1178, 1181 (D. Or. 2001) (citation

26

27  _____

        [3] A corporation is deemed a citizen of its state of incorporation and its principal
28  place of business. See 28 U.S.C. § 1332(c)(1).

                                          3

EXHIBIT 5

1   omitted).  Where joinder of a non-diverse defendant is deemed fraudulent, the

2   defendant's presence in the lawsuit is ignored for purposes of determining

3   diversity.  Morris, 236 F.3d at 1067.

4        "There is a presumption against finding fraudulent joinder, and defendants

5   who assert that [the] plaintiff has fraudulently joined a party carry a heavy burden

6   of persuasion." Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008

7   (N.D. Cal. 2001) (citations omitted); see also, Nishimoto v. Federman-Bachrach &

8   Assocs., 903 F.2d 709, 712 n. 3 (9th Cir. 1990) ("removal statute is strictly

9   construed against removal jurisdiction"); Emrich v. Touche Ross & Co., 846 F.2d

10  1190, 1195 (9th Cir. 1988) (same).  Courts have denied claims of fraudulent

11  joinder when there is any possibility that a plaintiff may prevail on the cause of

12  action against the in-state defendant.  Plute, 141 F. Supp. 2d at 1008, 1012; see

13  Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995) ("The

14  burden of proving a fraudulent joinder is a heavy one.  The removing party must

15  prove that there is absolutely no possibility that the plaintiff will be able to

16  establish a cause of action against the in-state defendant in state court.") (citation

17  and internal quotations omitted).  "In determining whether a defendant was joined

18  fraudulently, the court must resolve 'all disputed questions of fact and all

19  ambiguities in the controlling state law in favor of the non-removing party.'"

20  Plute, 141 F. Supp. 2d at 1008 (quoting Dodson v. Spiliada Maritime Corp., 951

21  F.2d 40, 42-43 (5th Cir. 1992)); Little v. Purdue Pharma, LP, 227 F. Supp. 2d 838,

22  849 (S.D. Ohio 2002) ("a federal court should hesitate before pronouncing a state

23  claim frivolous, unreasonable, and not even colorable in an area yet untouched by

24  the state courts").

25       Furthermore, any doubts concerning the sufficiency of a cause of action due

26  to inartful, ambiguous, or technically defective pleading must be resolved in favor

27  of remand; a lack of clear precedent does not render the joinder fraudulent.  Plute,

28  141 F. Supp. 2d at 1008 (citation omitted); see Peloza v. Capistrano Unified Sch.

4

EXHIBIT 5

1   Dist., 37 F.3d 517, 521 (9th Cir. 1994) (courts must interpret general allegations to

2   "embrace whatever specific facts might be necessary to support them"); Little, 227

3   F. Supp. 2d at 847 n. 12 ("in light of the heavy burden on defendants to show the

4   non-diverse defendants were fraudulently joined, it seems to this Court that a

5   finding of fraudulent joiner should not be based on factual deficiencies within the

6   pleadings which are correctable by amendment").

7        Merck contends that McKesson was fraudulently joined on two grounds:

8   (1) Plaintiffs have failed to allege an actual connection between their purported

9   injuries and McKesson's conduct, and (2) Plaintiffs have failed to state a viable

10  claim against McKesson.  With respect to the first ground, Merck argues Plaintiffs

11  must allege the VIOXX they ingested was distributed by McKesson to the

12  pharmacies from which Plaintiffs purchased VIOXX. Opp. at 5-6. Merck argues

13  that McKesson is one of numerous distributors and Plaintiffs have failed to plead

14  that McKesson received a benefit from the sale of the product, that its role was

15  integral to the business of the manufacturer, or that McKesson had control over or

16  ability to influence the manufacturing or distribution process. Id. at 7.

17       Plaintiffs, however, allege McKesson "was in the business of promoting and

18  distributing the pharmaceutical Vioxx." Compl. ¶ 50. Plaintiffs also allege they

19  have "been prescribed and supplied with, received, and [have] taken and ingested

20  and consumed the prescription drug Vioxx, as . . . distributed, marketed, labeled,

21  promoted, packaged . . . or otherwise placed in the stream of interstate commerce

22  by Defendants Merck & Company, Inc., McKesson, and Defendants Does 1

23  through 100." Id. ¶ 1.[4]

24

   ───────────────

25      [4] Most of the remaining allegations are against "Defendants," including McKesson.

26  General allegations against "Defendants" are sufficient to charge McKesson with the
    alleged wrongful conduct. See Plute, 141 F. Supp. 2d at 1007, 1010 n. 4 (any doubts
27  concerning the sufficiency of a cause of action due to inartful, ambiguous, or

28  technically defective pleading must be resolved in favor of remand); Peloza, 37 F.3d at

5

EXHIBIT 5

1       Next, Merck contends Plaintiffs have failed to state a viable claim against

2   McKesson.  Plaintiffs argue they have stated a claim against McKesson for strict

3   liability for failure to warn.  Under California law, manufacturers can be held

4   strictly liable for failure to warn.  <u>Brown v. Superior Court</u>, 44 Cal. 3d 1049, 1065

5   (1988).  Generally, such liability extends beyond manufacturers to retailers and

6   wholesalers.  <u>Johnson v. Standard Brands Paint Co.</u>, 274 Cal. App. 2d 331, 337

7   (1969); <u>Soule v. Gen. Motors Corp.</u>, 8 Cal. 4th 548, 560 (1994).  A retailer

8   includes anyone involved in the sale of a product short of "the housewife, who, on

9   occasion, sells to her neighbor a jar of jam or a pound of sugar." <u>Pan-Alaska</u>

10  <u>Fisheries, Inc. v. Marine Constr. & Design Co.</u>, 565 F.2d 1129, 1135 (9th Cir.

11  1977) (citations omitted).

12      In contrast to manufacturers of prescription drugs who are subject to strict

13  liability for failure to warn, pharmacists cannot be held strictly liable for failure to

14  warn.  <u>See</u> <u>Murphy v. E. R. Squibb & Sons, Inc.</u>, 40 Cal. 3d 672, 679 (1985);

15  <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104, 1117 (1996).  "Courts have

16  traditionally maintained a distinction between those rendering services and those

17  selling products, holding that those providing services are not subject to strict

18  liability[.]" <u>San Diego Hosp. Ass'n v. Superior Court</u>, 30 Cal. App. 4th 8, 13

19  (1994).  As the California Supreme Court has explained: "A key factor is that the

20  pharmacist who fills a prescription is in a different position from the ordinary

21  retailer because he cannot offer a prescription for sale except by order of the

22  doctor. . . . [H]e is providing a service to the doctor." <u>Murphy</u>, 40 Cal. 3d at 679.

23      Although California case law has carved out an exception for service

24  providers such as pharmacists, it has not addressed whether distributors of

25  prescription drugs can be strictly liable for failure to warn.  Because state law is

26

27  ―――――――――――――

    521 (courts must interpret general allegations to "embrace whatever specific facts might

28  be necessary to support them").

EXHIBIT 5

1   unsettled as to whether a distributor of prescription drugs could be strictly liable

2   for failure to warn, the court cannot rule that there is "absolutely no possibility"

3   Plaintiffs could prevail on this claim against McKesson. See Plute, 141 F. Supp.

4   2d at 1008, 1012; Cavallini, 44 F.3d at 259. Thus, Merck has not met its "heavy

5   burden" of demonstrating that a non-diverse defendant was fraudulently joined.

6   See Plute, 141 F. Supp. 2d at 1012; Little, 227 F. Supp. 2d at 849.

7        Merck argues the rationale for exempting pharmacists from strict liability

8   applies equally to distributors.  Citing case law from Pennsylvania, Maryland, and

9   Mississippi, Merck contends courts have not held pharmacists strictly liable

10  because to do so would interfere with the doctor-patient relationship. Obviously,

11  McKesson is not a pharmacist, and there is no potential for interference with any

12  doctor-patient relationship.  Moreover, the California Supreme Court has

13  distinguished pharmacists from others in the chain of distribution on the ground

14  that pharmacists provide services. See Murphy, 40 Cal. 3d at 679.  Unlike a

15  pharmacist, McKesson provides no service.

16       Next, Merck argues that under the "learned intermediary" doctrine,

17  distributors have no duty to warn and thus cannot be held strictly liable, citing two

18  unpublished district court cases where the court concluded that a distributor of a

19  prescription drug is not subject to liability.  See Barlow v. Warner-Lambert Co.,

20  CV 03-1647-R, slip op. at 2 (C.D. Cal. 2003); Skinner v. Warner-Lambert Co.,

21  CV 03-1643-R, slip op. at 2 (C.D. Cal. 2003).[5] However, both cases relied solely

22  on comment k of the Restatement (Second) of Torts, which does not exempt

23  distributors from strict liability. Rather, comment k states that a seller of

24  pharmaceuticals is not strictly liable *if* the products are properly prepared and

25  _____

26       [5] Under the "learned intermediary" doctrine, a drug manufacture has no duty to
    warn the ultimate consumer, the patient, so long as adequate warnings are given to the
27  doctor. Carlin, 13 Cal. 4th at 1108-09, 1116; Carmichael v. Reitz, 17 Cal. App. 3d 958,
    994 (1971).
28

7

EXHIBIT 5

1  marketed, and proper warning is given.[6]

2       Finally Merck argues that "Plaintiffs cite no case holding a pharmaceutical

3  supplier like McKesson liable for distributing an FDA-approved medication[.]"

4  Opp. at 10. However, it is Merck's "heavy burden" to show "absolutely no

5  possibility" that Plaintiffs could prevail on their strict liability claim against

6  McKesson. See Plute 141 F. Supp. 2d at 1008; Cavallini, 44 F.3d at 259; Little,

7  227 F. Supp. 2d at 849. As Merck has not meet this burden, it has failed to

8  demonstrate that McKesson was fraudulently joined.[7] Thus, this matter must be

9  remanded because complete diversity of citizenship is lacking. See Morris, 236

10 F.3d at 1067.

11              **B. Misjoinder of Plaintiffs**

12      The Eleventh Circuit has held that misjoinder of plaintiffs may be just as

13 fraudulent as the fraudulent joinder of a defendant against whom a plaintiff has no

14 claim. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996),

15 overruled on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072

16 (11th Cir. 2000). In Tapscott, the court explained that while "mere misjoinder" is

17 not fraudulent joinder, a party's attempt to misjoin parties may be "so egregious as

18 to constitute fraudulent joinder." Tapscott, 77 F.3d at 1360.[8] However, the Ninth

19 Circuit "has not found occasion to address Tapscott, and no other circuit has

20

21 _____

    [6] A "seller" of a product is "any person engaged in the business of selling products
22 for use or consumption. It therefore applies to any . . . wholesale or retail dealer or
23 distributor[.]" Restatement (Second) Torts § 402A, cmt. f.

24    [7] In light of the court's determination that Plaintiffs may have a cause of action
25 against McKesson based on strict liability for failure to warn, the court need not address
   the viability of the remaining claims against McKesson.
26
   [8] Tapscott "concerned two groups of plaintiffs that sued separate groups of
27 defendants on almost entirely separate legal grounds." Brazina v. Paul Revere Life Ins.
28 Co., 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003) (citing Tapscott, 77 F.3d at 1360).

                                    8

EXHIBIT 5

1   adopted its rationale."  <u>Brazina v. Paul Revere Life Ins. Co.</u>, 271 F. Supp. 2d

2   1163, 1172 (N.D. Cal. 2003).  Because the Ninth Circuit has not adopted this

3   novel theory, the court declines to do so here.[9]

4

5                              **IV. CONCLUSION**

6        Accordingly, the court **GRANTS** Plaintiffs' Motion to Remand.

7

8   IT IS SO ORDERED.

9

10  DATED: March 3, 2004

11                                              _Nora M. Manella_
                                                Nora M. Manella
12                                              United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24   ——————————

25        [9] Even under the <u>Tapscott</u> theory, it is unclear whether the joinder of the California
     plaintiffs is "so unrelated as to constitute egregious misjoinder."  <u>See</u> <u>Brazina</u>, 271 F.

26   Supp. 2d at 1172; <u>Tapscott</u>, 77 F. 3d at 1360; <u>In re Norplant Contraceptive Prods. Liab.</u>
     <u>Litig.</u>, 168 F.R.D. 579, 581 (E.D. Tex. 1996) (finding joinder of plaintiffs proper where

27   defendants failed to adequately warn plaintiffs of risks and severity of side effects of

28   prescription contraceptives, even though plaintiffs had different doctors).

                                    9

EXHIBIT 5

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**PRIORITY SEND**

### CIVIL MINUTES -- GENERAL

Case No.    **CV 05-4025-JFW (MANx)**                    Date:  July 5, 2005

Title:    TOMMY ALBRIGHT, et al. -v- MERCK & CO., INC., et al.

---

**PRESENT:**

### HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

**Shannon Reilly**                         **None Present**
**Courtroom Deputy**                       **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**      **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                       None

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND TO STATE COURT [filed 6/13/05; Docket No. 5];**



**ORDER REMANDING ACTION TO LOS ANGELES COUNTY SUPERIOR COURT;**

**ORDER DENYING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION AS MOOT [filed 7/1/05]**

On June 13, 2005, Plaintiffs filed a Motion to Remand to State Court.  On June 27, 2005, Defendant Merck & Co., Inc. ("Merck") filed its Opposition.  On July 1, 2005, Plaintiffs filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for July 11, 2005 is hereby vacated and the matter taken off calendar.  After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

On April 5, 2005, 50 individuals (collectively "Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants Merck and McKesson Corporation alleging the following six causes of action: (1) Negligence; (2) Strict product liability - failure to warn; (3) Breach of express warranty; (4) Breach of implied warranty; (5) Negligent misrepresentation; and (6) Fraud.  On June 3, 2005, Defendant Merck filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Notice of Removal").

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Page 1 of 3

**EXHIBIT 6**
67

In its Notice of Removal, Defendant Merck claims that this Court has subject matter jurisdiction over this action on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because all Plaintiffs are completely diverse from Defendant Merck, and the amount in controversy exceeds $75,000. Defendant Merck argues that the citizenship of Defendant McKesson Corporation ("McKesson"), a Delaware corporation with its principal place of business in California, should not be considered in determining whether this Court has jurisdiction because McKesson has been fraudulently joined. Plaintiffs filed the present Motion to Remand on the grounds that the parties are not completely diverse, McKesson is properly joined as a defendant, and this Court therefore lacks subject matter jurisdiction over this action.

The basic requirement for jurisdiction in diversity cases is that all plaintiffs be of different citizenship than all defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *see also Munoz v. Small Business Administration*, 644 F.2d 1361, 1365 (9th Cir. 1981) (noting that "[d]iversity jurisdiction requires that the plaintiffs and each defendant be citizens of different states"). Even where the complete diversity requirement is met, removal is not permitted where one of the defendants is a "citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). However, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the *settled* rules of state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (emphasis added). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is any possibility that the plaintiffs may prevail on the cause of action against the in-state defendant. *See id.* at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." *Lieberman v. Meshkin, Mazandarani*, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996). "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Id.* at 1008 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)). Moreover, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *See id.*

Defendant Merck argues that Defendant McKesson was fraudulently joined because Plaintiffs failed to allege an actual connection between their alleged injuries and any conduct by Defendant McKesson. *See* Opposition at 12-15. To the contrary, Plaintiffs allege in their Complaint that Defendant McKesson "distributed and sold Vioxx in and throughout the State of California, including Los Angeles County" and "purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Vioxx." Complaint at ¶¶ 3, 70. Plaintiffs further allege, *inter alia*, that both Defendants "actually knew of Vioxx's defective nature . . . but continued to design, manufacture, market, and sell the drug so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs." *Id.* at ¶ 106. Based on this allegation and the other allegations contained in Plaintiffs' Complaint, Plaintiffs specifically allege that "[a]s a result of . . . McKesson's conduct, Plaintiff suffered injuries

Initials of Deputy Clerk  sr

**EXHIBIT 6**

and damages." *Id.* at ¶ 108. These allegations clearly connect Defendant McKesson to Plaintiffs' alleged injuries. Although the majority of Plaintiffs' allegations are stated against all "Defendants," including McKesson, under the liberal pleading requirements, such general allegations against all "Defendants" are sufficient to charge Defendant McKesson with the alleged wrongful conduct. *See, e.g., Plute,* 141 F. Supp. 2d at 1010, n.4 (citing *Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir. 1994).

Defendant Merck also argues that Defendant McKesson was fraudulently joined because Plaintiffs have failed to state a viable claim for relief against Defendant McKesson. *See* Opposition at 19-23. Defendant Merck contends that each of the causes of action alleged in Plaintiffs' Complaint are based on "an alleged failure to warn about the purported risks of Vioxx," and that "under California law, [McKesson] has no duty to warn." *Id.* at 19. However, Defendant Merck does not, and cannot cite any California cases holding that a distributor cannot be held liable for failure to warn, as the California state courts have not yet addressed that issue. Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be able to prevail on the merits of their claims in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined. Accordingly, this matter must be remanded because complete diversity of citizenship is lacking.

In a final attempt to remain in federal court, Defendant Merck claims in its Notice of Removal that the twenty Plaintiffs who are citizens of California have been "fraudulently misjoined," and argues that the Court should sever those Plaintiffs from the action and retain jurisdiction over the remaining thirty-two Plaintiffs who are completely diverse from Defendants. In support of its argument, Defendant Merck relies primarily on the Eleventh Circuit's decision in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996). In *Tapscott,* the Eleventh Circuit held that while "mere misjoinder" does not constitute fraudulent joinder, a party's attempt to misjoin parties may be "so egregious as to constitute fraudulent joinder." *Tapscott,* 77 F.3d at 1360. However, the Ninth Circuit has not found the occasion to address, nor adopt, the Eleventh Circuit's holding in *Tapscott. See Brazina v. Paul Revere Life Ins. Co.,* 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003); *Osborn v. Metropolitan Life Ins. Co.,* 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004). Moreover, as the Northern District noted in *Brazina, Tapscott* "concerned two groups of plaintiffs that sued separate groups of defendants on almost entirely separate legal grounds." *Id.* That is simply not the situation that this Court is presented with here, and the Court declines to adopt and apply the theory set forth in *Tapscott* to this case.

For all of the foregoing reasons, Plaintiffs' Motion to Remand is **GRANTED**. This action is hereby **REMANDED** to Los Angeles County Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

In light of the Court's Order remanding this action to Los Angeles County Superior Court, Defendant's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation, which is currently on calendar for August 1, 2005, is **DENIED as moot**.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

Initials of Deputy Clerk  sr

**EXHIBIT 6**
60

# EXHIBIT F

ENTERED
CLERK, U.S. DISTRICT COURT

SEP 2 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

**PRIORITY SEND**

Case No.    **CV 05-5559-JFW (CWx)**                    Date:  September 1, 2005

Title:      JUNE AAROE, et al. -v- MERCK & CO., INC., et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                                   None

**PROCEEDINGS (IN CHAMBERS):**     **ORDER REMANDING ACTION TO LOS ANGELES
                                    COUNTY SUPERIOR COURT**

On June 2, 2005, 31 individuals (collectively "Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants Merck & Co., Inc. ("Merck") and McKesson Corporation ("McKesson") alleging the following eleven causes of action: (1) Strict liability - failure to warn; (2) Negligence; (3) Negligence *per se*; (4) Breach of implied warranty; (5) Breach of express warranty; (6) Deceit by concealment; (7) Negligent misrepresentation; (8) Violation of Business and Professions Code § 17200; (9) Violation of Business and Professions Code § 17500; (10) Wrongful death; and (11) Loss of consortium.  On August 1, 2005, Defendant Merck filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Notice of Removal").

On August 9, 2005, the Honorable R. Gary Klausner issued an Order to Show Cause Re: Lack of Jurisdiction ("OSC") and ordered Defendant Merck to respond by August 23, 2005. Judge Klausner also indicated that Plaintiffs could file a response to the OSC within the same time period.  On August 11, 2005, pursuant to General Order 224, this action was transferred from the calendar of Judge Klausner to this Court.  On August 22, 2005, Plaintiffs filed a Response in Support of Remand.  On August 23, 2005, Defendant Merck filed its "Showing of Cause."

In its Notice of Removal and its Response to Judge Klausner's OSC, Defendant Merck claims that this Court has subject matter jurisdiction over this action on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because all Plaintiffs are completely diverse from Defendant Merck, and the amount in controversy exceeds $75,000.  Defendant Merck argues that the citizenship of Defendant McKesson, a Delaware corporation with its principal place of business in California, should not be considered in determining whether this Court has jurisdiction because Defendant McKesson has been fraudulently joined.

___ Docketed
___ Copies / NTC Sent
___ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD  cc Docket, Letts 4

Page 1 of 3

EXHIBIT 7

The basic requirement for jurisdiction in diversity cases is that all plaintiffs be of different citizenship than all defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *see also Munoz v. Small Business Administration*, 644 F.2d 1361, 1365 (9th Cir. 1981) (noting that "[d]iversity jurisdiction requires that the plaintiffs and each defendant be citizens of different states"). Even where the complete diversity requirement is met, removal is not permitted where one of the defendants is a "citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). However, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the *settled* rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (emphasis added). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is *any possibility* that the plaintiffs may prevail on the cause of action against the in-state defendant. *See id.* at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a *possibility* that they may do so." *Lieberman v. Meshkin, Mazandarani*, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996) (emphasis added). "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Id.* at 1008 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)). Moreover, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *See id.*

Defendant Merck argues that Defendant McKesson was fraudulently joined because "Plaintiffs' factual allegations against McKesson are vague at best, including only the nonspecific and ambiguous allegations that McKesson 'distributed and sold Vioxx in and throughout [California and Arizona], which was ingested by . . . plaintiffs' and that McKesson 'knew of should have known' about the alleged tortuous conduct that plaintiff attribute to Merck." Response to OSC at 2 (quoting Complaint at ¶¶ 4, 5, 107). However, contrary to Defendant Merck's assertions, these allegations are sufficient to "allege an actual connection between the defendant's alleged conduct and the plaintiff's purported injury," and under the liberal pleading requirements, are sufficient to charge Defendant McKesson with the alleged wrongful conduct. *See, e.g., Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d at 1010, n.4 (citing *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

Defendant Merck also argues that Defendant McKesson was fraudulently joined because Plaintiffs' claims against McKesson are "untenable." *See* Response to OSC at 8. Defendant Merck contends that each of the causes of action alleged in Plaintiffs' Complaint are based on "an alleged failure to warn about the purported risks of Vioxx, and McKesson has no duty to warn under California law." *Id.* In support of its argument, Defendant Merck cites a California Supreme Court decision involving the liability of pharmacists for defective drugs and then concludes that "[t]he same rule applies (and should apply) to pharmaceutical wholesale distributors. *Id.* at 9. However, Defendant Merck does not, and cannot cite any California cases holding that a distributor cannot be held liable for failure to warn, as the California state courts have not yet

Initials of Deputy Clerk   sr
EXHIBIT 7
71

addressed that issue. Defendant Merck has simply failed to satisfy its heavy burden of demonstrating that there is no possibility that Plaintiffs will be able to prevail on the merits of their claims against Defendant McKesson in state court, and therefore has failed to demonstrate that Defendant McKesson was fraudulently joined.

Accordingly, complete diversity of citizenship is lacking and this action is hereby **REMANDED** to Los Angeles County Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

Initials of Deputy Clerk   sr

EXHIBIT 7

# EXHIBIT G

1  GIRARDI | KEESE
   1126 Wilshire Blvd.
2  Los Angeles, CA 90017
   (213) 977-0211
3  FAX (213) 481-1554
4  THOMAS V. GIRARDI - BAR NO. 36603
   JAMES G. O'CALLAHAN, STATE BAR NO. 126975
5
6  Plaintiffs Liaison Counsel

7

8
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                            COUNTY OF LOS ANGELES
10

11 Coordination Proceeding Special Title (Rule 1550(b))

12
                                        )  CASE NO. JCCP No. 4247
13 **This Document Applies to All**      )
                                        )  Assigned to the Honorable Victoria
14 **VIOXX ® CASES**                     )  Chaney, Department 324
                                        )
15                                       )  NOTICE OF RULING
                                        )
16 _____)

17
   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:
18
           Pursuant to the court's minute order, attached hereto is a copy of the court's revised ruling
19
   pertaining to the distributor defendant's demurrer in the above-captioned matter.
20
   Dated:  May 22, 2006                         GIRARDI AND KEESE
21

22                                       By:    _James 6 O'Callahan_
23                                              James G. O'Callahan
                                                Plaintiffs' Liaison Counsel
24

25

26

27

28

                                        -1-
                                                                   EXHIBIT 3
                                                                     -37-

05/23/2006 10:45 FAX 2134811&amp;.                    GIRARDI &amp; KEESE                                           @003
Case 3:07-cv-05886-MHP    Document 15-2    Filed 12/03/2007    Page 2 of 14

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 05/16/06 | | **DEPT.** 324 |
|---|---|---|
| HONORABLE VICTORIA CHANEY            JUDGE | E. SABALBURO | DEPUTY CLERK |
| HONORABLE #7                          JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| F. ROJAS, C.A.        Deputy Sheriff | NONE | Reporter |

| JCCP4247 | Plaintiff Counsel | |
|---|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE RULE (1550 (b)) | Defendant Counsel | RECEIVED MAY 1 7 2006 GIRARDI &amp; KEESE |
| VIOXX Cases | | |
| | NO APPEARANCES | |

**NATURE OF PROCEEDINGS:**

REVISED RULING ON SUBMITTED MATTER HEARD APRIL 10, 2006

The Court hereby makes its revised ruling pursuant to the "REVISED RULING ON REQUEST FOR RECONSIDERATION" as signed and filed this date.

On its own motion the court GRANTS reconsideration of its ruling of March 3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs' cause of action for strict liability--failure to warn. Upon reconsideration, the demurrer is OVERRULED.

Counsel James G. O'Callahan is ordered to serve a copy of the court's ruling on all parties.

                    CLERK'S CERTIFICATE OF MAILING/
                    NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 5-16-2006 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

                    Page    1 of    2    DEPT. 324

MINUTES ENTERED
05/16/06
COUNTY CLERK

EXHIBIT 3
-38-

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 05/16/06 | DEPT. 324 |
| HONORABLE VICTORIA CHANEY    JUDGE | E. SABALBURO    DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM
#7 | ELECTRONIC RECORDING MONITOR |
| F. ROJAS, C.A.    Deputy Sheriff | NONE    Reporter |

JCCP4247

COORDINATION PROCEEDING SPECIAL
TITLE RULE (1550 (b))

VIOXX Cases

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCES

**NATURE OF PROCEEDINGS:**

Date: 5-16-2006

John A. Clarke, Executive Officer/Clerk

By: _____
          E. Sabalburo

James G. O'Callahan
GIRARDI KEESE
1126 Wilshire Blvd.
Los Angeles, CA 90017

Page    2 of    2    DEPT. 324

| MINUTES ENTERED |
|---|
| 05/16/06 |
| COUNTY CLERK |

EXHIBIT 3
-39-

Case 3:08-cv-01131-MHP    Document 30    Filed 05/01/2008    Page 44 of 54
05/23/2006 10:46 FAX 2134811U    GIRARDI & KEESE                    ☒005
    Case 3:07-cv-05886-MHP    Document 15-2    Filed 12/03/2007    Page 4 of 14

MAY 1 7 2006

GIRARDI & KEESE

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

**FILED**
LOS ANGELES SUPERIOR COURT

MAY 1 6 2006

JOHN A. CLARKE, CLERK

BY E. SABALBURO, DEPUTY

CASE NO. JCCP 4247

IN RE VIOXX CASES

REVISED RULING ON REQUEST FOR
RECONSIDERATION

Hearing date:    4/11/06

Ruling date:    5/16/06

After considering the moving, opposition and reply papers and the arguments of
counsel at the hearing, the court now rules as follows:

**On its own motion the court GRANTS reconsideration of its ruling of March
3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs'
cause of action for strict liability—failure to warn. Upon reconsideration, the
demurrer is OVERRULED.**

**I.    INTRODUCTION**

In their first cause of action plaintiffs allege strict liability—failure to warn—
against "Pharmaceutical Distributor Does 101 to 200." (Compl., p. 13.) In sustaining the
distributor defendants' demurrer to this cause of action the court on March 3, 2006 ruled
that

Pharmacists cannot be held strictly liable for defects in prescription
pharmaceuticals or for failure to warn of such defects. (*Murphy v. E.R. Squibb &*

-1-

EXHIBIT 3
-40-

Case 3:08-cv-01131-MHP   Document 30   Filed 05/01/2008   Page 45 of 54
05/23/2006 10:47 FAX 2134811¦        GIRARDI & KEESE                    ☐006
           Case 3:07-cv-0588o-MHP   Document 15-2   Filed 12/03/2007   Page 5 of 14

*Sons, Inc.* (1985) 40 Cal.3d 672 [pharmacists not strictly liable because they have no discretion to depart from a valid prescription, and strict liability would raise the price of prescription drugs, which is against public policy].)  Neither can manufacturers.  (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1060-1061 [no strict liability against pharmaceutical manufacturers].)  [¶]  It would be an anomalous to hold a distributor, who stands between  the manufacturer and pharmacist in the chain of distribution, to a different standard.

At a status conference on April 11, 2006, plaintiffs requested that the court sua sponte reconsider the above in light of *Carlin v. Superior Court* (1996) 13 Cal. 4th 1104 (*Carlin*), a case they did not cite in their opposition to the demurrer.  In opposition, the distributor defendants argued, as they argued in their demurrer, that exemption of distributors of prescription drugs from the doctrine of strict liability is supported by California case law, public policy, and the Restatement (Third) of Torts.

The court agreed to reconsider the matter, and now reverses its earlier ruling.

## II.   DISCUSSION

### A.   Reconsideration

A court may, on its own motion, reconsider its interim rulings.  (*Le Francois v. Goel* (2005) 35 Cal.4th 1094.)  A court may also take under advisement a party's request that it reconsider a ruling.  (*Id.* at p. 1108.)

### B.   Strict Liability

The parties well know the law of strict liability.  A manufacturer may be held strictly liable for injuries caused by a defective product that it knew would not be inspected by the consumer for defects.  (*Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57.)  This is so because a "manufacturer, unlike the public, can anticipate or guard against the recurrence of hazards, [] the cost of injury may be an overwhelming

EXHIBIT 3
-41-

05/23/2006 10:48 FAX 2134811.   GIRARDI & KEESE   ☒007
Case 3:07-cv-05886-MHP   Document 15-2   Filed 12/03/2007   Page 6 of 14

1  misfortune to the person injured whereas the manufacturer can insure against the risk and

2  distribute the cost among the consuming public, and [] it is in the public interest to

3  discourage the marketing of defective products." (*Brown v. Superior Court, supra,* 44

4  Cal.3d at p. 1056 (*Brown*).) Strict liability also applies to retailers (*Vandermark v. Ford*

5  *Motor Co.* (1964) 61 Cal.2d 256) but not to "'those who sell their services for the

6  guidance of others . . . .'" (*Murphy v. E.R. Squibb & Sons, Inc., supra,* 40 Cal.3d at p. 677

7  (*Murphy*), quoting *Gagne v. Bertran* (1954) 43 Cal.2d 481, 487).

8       There are three types of product defects for which a manufacturer and distributor

9  may be held liable:  Manufacturing defects, design defects, and deficient warnings or

10  instructions. (*Brown, supra,* at p. 1057.)  Though strong policy considerations—

11  protection of consumers and distribution of the cost of injury—support the doctrine of

12  strict liability generally, other policy considerations—including the "public interest in the

13  availability of drugs at an affordable price" (*Brown, supra,* at p. 1063)—militate against

14  applying the doctrine specifically to prescription drugs.

15       In its March 3 ruling the court identified two boundaries in the chain of

16  distribution—the drug manufacturer and the ultimate retailer—where, for policy reasons,

17  the courts have held strict liability not to apply.  The court then reasoned that if strict

18  liability does not apply at the book-ends of distribution, it doesn't apply in the middle.

19  As will be discussed below, the court misapprehended the case law's treatment of the

20  book-ends.

21

22  **C.    California Case Law**

23

24       In its March 3 ruling, *supra,* the court overstated the rule of *Brown* and failed to

25  limit *Murphy* to its rationale.

26       In *Brown,* the court considered whether a manufacturer of prescription drugs

27  could, like other manufacturers, be held strictly liable for injuries caused by its products.

28  After discussing various policy considerations the court held prescription drugs should be

treated differently from other products.  However, *Brown* did not, as this court stated,

-3-

EXHIBIT 3
-42-

Case 3:08-cv-01131-MHP    Document 30    Filed 05/01/2008    Page 47 of 54
05/23/2006 10:49 FAX 2134811.                GIRARDI & KEESE                              ☑008
         Case 3:07-cv-05886-MHP        Document 15-2    Filed 12/03/2007    Page 7 of 14

1   hold that manufacturers of prescription drugs are exempt from strict liability altogether; it

2   held only that they may not be held strictly liable for injuries caused by design defects in

3   their products (*id.* at p. 1065) or by failure to warn of unknowable risks (*id.* at p. 1066.)

4   *Brown* held drug manufacturers *could* be held strictly liable for injuries caused by failure

5   to warn of known or reasonably scientifically knowable risks. (*Id.* at p. 1069.)

6       Thus falls one of the book-ends relied upon by this court in its March 3 ruling, for

7   plaintiff alleges the distributor defendants are subject to liability in the same wise as were

8   the manufacturer defendants in *Brown*—liability for failure to warn of risks about which

9   they knew or reasonably should have known.

10      The other book-end was *Murphy*. There, the court held pharmacists cannot be

11  held strictly liable for defects in prescription pharmaceuticals or for failure to warn of

12  such defects. (*Id.* at p. 681.) Defendants liken themselves to pharmacists and argue

13  *Murphy* exempts them, too, from strict liability.

14      In *Murphy*, the plaintiff asserted that a pharmacy that sells prescription drugs "is in

15  the same position as a retailer of any other consumer product, and that the reasons

16  advanced in *Greenman* and *Vandermark* for imposing strict liability necessarily apply to

17  a pharmacy." (*Murphy*, at p. 676.)  The court disagreed, ultimately affirming the trial

18  court's granting of a pharmacy defendant's motion for judgment on the pleadings. (*Id.* at

19  p. 681.)

20      To understand why it did so requires close reading.  First, the court noted "[i]t is

21  critical to the issue posed to determine if the dominant role of a pharmacist in supplying a

22  prescription drug should be characterized as the performance of a service or the sale of a

23  product." (*Id.* at p. 677.)  "'[T]hose who sell their services for the guidance of others . . .

24  are not liable in the absence of negligence or intentional misconduct.'" (*Ibid.*, citation

25  omitted.)  The court surveyed case law, amicus briefs, and the Business and Professions

26  and Health and Safety Codes, ultimately finding that while a "pharmacist is engaged in a

27  hybrid enterprise, combining the performance of services and the sale of prescription

28  drugs" (*id.* at p. 678), "[t]he Legislature must have intended . . . that even though a

-4-

EXHIBIT 3
-43-

Case 3:08-cv-01131-MHP   Document 30   Filed 05/01/2008   Page 48 of 54
05/23/2006 10:50 FAX 2134811        GIRARDI & KEESE                    ☑009
        Case 3:07-cv-05886-MHP   Document 15-2   Filed 12/03/2007   Page 8 of 14

1  pharmacist is paid for the medication he dispenses, his conduct in filling a prescription is

2  to be deemed a service, and . . . is immune from strict liability" (*id.* at p. 680).

3      Thus falls the second book-end relied upon by this court in its March 3 ruling, for

4  the distributor defendants cannot argue their business is, like a pharmacist, to provide a

5  service. They are thus in a position different from that of the pharmacy in *Murphy* and

6  cannot apply its holding to them.

7      The final case on point is *Carlin, supra.* There, after an extensive policy

8  discussion the supreme court affirmed its earlier ruling in *Brown*: A manufacturer of

9  prescription drugs "should bear the costs, in terms of preventable injury or death, of its

10  own failure to provide adequate warnings of known or reasonably scientifically knowable

11  risks." (*Id.* at p. 1117.)

12      No California case law supports defendants' argument that distributors of

13  prescription drugs should not be held strictly liable for injuries caused by their failure to

14  warn of known or reasonably scientifically knowable risks. The only law nearly on point

15  is to the contrary: In general, the strict liability doctrine applies to those in the chain of

16  distribution. (See *Vandermark v. Ford Motor Co., supra,* 61 Cal.2d at pp. 262-263

17  ["Retailers like manufacturers . . . . are an integral part of the overall producing and

18  marketing enterprise that should bear the cost of injuries resulting from defective

19  products."].)

20

21  **D.    Public Policy**

22

23      There being no California case law on point, the distributor defendants argue the

24  public policy considerations discussed and acknowledged in *Brown, Murphy* and *Carlin*

25  require that distributors of prescription drugs not be held strictly liable for injuries caused

26  by their failure to warn of known or reasonably scientifically knowable risks.

27      For the court's present purpose, the important point to take away from *Brown* and

28  *Carlin* is that while for policy reasons prescription drugs are treated differently from

other products, those reasons are not compelling enough to exempt drug manufacturers

EXHIBIT 3
-44-

Case 3:08-cv-01131-MHP    Document 30    Filed 05/01/2008    Page 49 of 54
05/23/2006 10:51 FAX 2134811    GIRARDI & KEESE    ☒010
Case 3:07-cv-05886-MHP    Document 15-2    Filed 12/03/2007    Page 9 of 14

1  from strict liability altogether. And policy considerations were not the basis of *Murphy's*

2  holding at all. (After holding that pharmacies provide a service when they dispense

3  prescription drugs, the court speculated as to why "[t]he Legislature may have

4  determined that it is not in the public interest to subject [pharmacies] to strict liability,"

5  (*Murphy*, at p. 680), discussing various possible policy considerations the Legislature

6  could have relied upon. However, those policy considerations were discussed only

7  insofar as they supported the Legislature's action, not the court's holding, which merely

8  relied upon the Legislature's action.) There is therefore no California authority for

9  defendants' proposition that public policy requires that distributors of prescription drugs

10  be treated differently from distributors of other products for purposes of strict liability.

12  **E.    Restatement**

14  Finally, defendants argue the Third Restatement of Torts holds distributors may be

15  held liable only for negligence.

16  At issue is section 6, subdivision (e), Products Liability:

17  A retail seller or other distributor of a prescription drug or medical device is
18  subject to liability for harm caused by the drug or device if: [¶] (1) at the time of
   sale or other distribution the drug or medical device contains a manufacturing
19  defect . . . ; or [¶] (2) at or before the time of sale or other distribution of the drug
   or medical device the retail seller or other distributor *fails to exercise reasonable*
20  *care* and such failure causes harm to persons.

22  (Rest.3d Torts, Products Liability, § 6, subd. (e), emphasis added.)

23  Missing from this description is the word "only".—though the rule states that a

24  distributor of as prescription drug may be held liable for injuries caused by its failure to

25  exercise reasonable care, it does not state that is the only circumstance in which a

26  distributor may be held liable. But that is what it means, as evidenced by comment h:

27
28  The rule governing most products imposes liability on wholesalers and retailers
   for selling a defectively designed product, or one without adequate instructions or
   warnings, even though they have exercised reasonable care in marketing the

-6-

EXHIBIT 3
-45-

Case 3:08-cv-01131-MHP   Document 30   Filed 05/01/2008   Page 50 of 54
05/23/2006 10:52 FAX 2134811          GIRARDI & KEESE                    ☒011
Case 3:07-cv-05886-MHP   Document 15-2   Filed 12/03/2007   Page 10 of 14

product. [Citations.] Courts have refused to apply this general rule to nonmanufacturing retail sellers of prescription drugs and medical devices and, instead, have adopted the rule stated in Subsection (e). That rule subjects retailers to liability *only* if the product contains a manufacturing defect or if the retailer fails to exercise reasonable care in connection with distribution of the drug or medical device. In so limiting the liability of intermediary parties, courts have held that they should be permitted to rely on the special expertise of manufacturers, prescribing and treating health-care providers, and governmental regulatory agencies. They have also emphasized the needs of medical patients to have ready access to prescription drugs at reasonable prices.

(Rest.3d Torts, Products Liability, § 6, subd. (e), com. h, emphasis added.)

As discussed above, though California cases discuss policy considerations attendant upon the manufacture and distribution of prescription drugs, none has found those considerations to require that actors in the chain of distribution be exempt from strict liability altogether. (Though in *Murphy* a pharmacy was exempted from strict liability, it was because a pharmacy provides a service, not because public policy requires the exemption.)

The cases considered by The American Law Institute are no different. The court will survey them:

*Elsroth v. Johnson & Johnson* (S.D.N.Y. 1988) 700 F.Supp. 151 held a manufacturer and retailer cannot be liable in damages for the criminal conduct of unknown third party who tampered with the manufacturer's product post-distribution.

*Jones v. Irvin* (S.D.Ill. 1985) 602 F.Supp. 399 held a pharmacist had no duty to warn a customer that a drug is being prescribed in dangerous amounts, that the customer is being over medicated, or that various drugs in their prescribed quantities could cause adverse reactions.

*Murphy, supra,* held a pharmacy cannot be held strictly liable because in dispensing prescription medications it predominantly provides a service, as opposed to effecting a sale.

*Leesley v. West* (Ill.App.Ct. 1988) 518 N.E.2d 758 held that under the learned intermediary doctrine a drug manufacturer has a duty to warn only prescribing doctors of

EXHIBIT 3
-46-

Case 3:08-cv-01131-MHP    Document 30    Filed 05/01/2008    Page 51 of 54
05/23/2006 10:54 FAX 2134811        GIRARDI & KEESE                                    ☑012
Case 3:07-cv-0588b-MHP        Document 15-2      Filed 12/03/_J07    Page 11 of 14

1    the inherent dangers of the drug, not consumers directly, and that a pharmacist should be

2    held to no greater duty than a manufacturer.

3        *Lemire v. Garrard Drugs* (Mich.Ct.App. 1980) 291 N.W.2d 103 held a successor

4    drug store could not be held liable for injuries caused by the predecessor drug store's

5    filling a doctor's prescription.

6        *Parker v. St. Vincent Hosp.* (N.M.App. 1996) 919 P.2d 1104 held public policy

7    favored not imposing strict liability on hospitals for supplying a *defectively designed*

8    implant selected by a physician. The court reversed the grant of summary judgment on

9    plaintiff's negligence claim, holding the hospital may have a duty to investigate the safety

10   of the implants before supplying them.

11       *Batiste v. American Home Products Corp.* (N.C.Ct.App. 1977) 231 S.E.2d 269

12   noted that under North Carolina law the doctrine of strict liability does not apply to

13   retailers (*id.* at p. 275) and held a druggist is not strictly liable for providing a drug

14   ordered by a physician (*id.* at pp. 275-276).

15       *Coyle v. Richardson-Merrell, Inc.* (Pa. 1991) 584 A.2d 1383 held that public

16   policy requires that a pharmacist not be held strictly liable damages caused because by

17   the pharmacist's failure to provide warnings of the risks of a drug to a patient/consumer.

18   (This case goes one step beyond *Murphy, supra,* but still does not extend the rule to

19   defendant distributors.)

20       *Makripodis v. Merrell-Dow Pharmaceuticals., Inc.* (Pa.Super.Ct. 1987) 523 A.2d

21   374 is to the same effect as *Coyle v. Richardson-Merrell, supra.*

22       *Pittman v. Upjohn Co.* (Tenn. 1994) 890 S.W.2d 425 held a manufacturer and a

23   prescribing physician had only a duty to use reasonable care in giving warnings about an

24   unavoidably dangerous drug.

25       In sum, none of the cases relied upon by the American Law Institute in

26   formulating section 6, subdivision (3) of the Restatement supports the proposition that

27   distributors of prescription drugs (other than pharmacists) should be exempt from strict

28   liability for failure to warn of known or reasonably knowable risks.

-8-

EXHIBIT 3
-47-

Case 3:08-cv-01131-MHP    Document 30    Filed 05/01/2008    Page 52 of 54
05/23/2008 10:55 FAX 2134811!          GIRARDI & KEESE                    ☒013
              Case 3:07-cv-05886-MHP    Document 15-2    Filed 12/03/2007    Page 12 of 14

**F.      Question of First Impression**

Though no California case, no recitation of public policy found in California case law, and no case supporting the Third Restatement of Torts supports the proposition that an exception to the strict liability doctrine should be made for distributors of prescription drugs, no authority prohibits such an exception either, and the proposition that there should be one has its appeal.  Some of the policy considerations applicable to pharmacists may apply to distributors:

> [T]he wide availability of a full range of prescription drugs at economical cost [may] outweigh[] the advantage to the individual consumer of being able to recover for injuries on a strict liability basis rather than to be limited to claims arising from negligence. ·
>
> If [distributors] were held strictly liable for the drugs they [distribute], some of them, to avoid liability, might restrict availability by refusing to [distribute] drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients.  Furthermore, in order to assure that a [distributor] receives the maximum protection in the event of suit for defects in a drug, the [distributor] may select the more expensive product made by an established manufacturer when he has a choice of several brands of the same drug. . . .  "Why choose a new company's inexpensive product, which has received excellent reviews in the literature for its quality, over the more expensive product of an established multinational corporation which will certainly have assets available for purpose of indemnification 10, 20, or 30 years down the line?" [Citation omitted.]
>
> [S]ince the doctor who ordered the drug provided by the [distributor] cannot be held strictly liable for its defects and in some circumstances the manufacturer who created the defect can also escape liability, it would be unfair and burdensome to expose the [distributor] alone to strict liability . . . .

(*Murphy, supra,* at pp. 680-681.)

But these considerations are speculative, and the court, being aware of no judicial conclusion on them, will leave their resolution to the Legislature.

Finally, the distributor defendants argue that a distributor who neither created nor tested a drug "has no connection with physicians, certainly knows far less about the drug than does the manufacturer, [] is in no position to independently test or analyze a drug

-9-

EXHIBIT 3
-48-

Case 3:08-cv-01131-MHP    Document 30    Filed 05/01/2008    Page 53 of 54
05/23/2006 10:56 FAX 2134811    GIRARDI & KEESE    ☒014
Case 3:07-cv-05886-MHP    Document 15-2    Filed 12/03/2007    Page 13 of 14

1  and/or its labeling," and is "not privy to proprietary and non-public information known to

2  the manufacturers", and therefore cannot reasonably be held strictly liable for failure to

3  warn. (Opp., p. 7.)

4       This argument, too, has its appeal. But the same can be said of distributors of

5  many products, and with respect to them public policy is well established:

> [T]the seller, by marketing his product for use and consumption, has undertaken
> and assumed a special responsibility toward any member of the consuming public
> who may be injured by it; [] the public has the right to and does expect, in the case
> of products which it needs and for which it is forced to rely upon the seller, that
> reputable sellers will stand behind their goods; [] public policy demands that the
> burden of accidental injuries caused by products intended for consumption be
> placed on those who market them, and be treated as a cost of production against
> which liability insurance can be obtained; and [] the consumer of such products is
> entitled to the maximum of protection at the hands of someone, and the proper
> persons to afford it are those who market the products.

13  (Rest.2d Torts, § 402A, com. c.)

14       Defendants point to no authority that makes an exception to the doctrine of strict

15  liability for distributors in an industry analogous to the prescription pharmaceutical

16  industry. This court will not be the first to make such an exception at the pleading stage.

18  **In sum:**

19       **On its own motion the court GRANTS reconsideration of its ruling of March

20  3, 2006 in which it sustained the distributor defendants' demurrer to plaintiffs'

21  cause of action for strict liability—failure to warn. Upon reconsideration, the

22  demurrer is OVERRULED.**

24  IT IS SO ORDERED.
    Dated: 5/16/06

                                            Victoria Gerrard Chaney

                                                    Judge

-10-

EXHIBIT 3
-49-

05/23/2008 10:57 FAX 2134811   GIRARDI & KEESE                                    ☑015
Case 3:08-cv-01131-MHP   Document 30   Filed 05/01/2008   Page 54 of 54
Case 3:07-cv-05886-MHP   Document 15-2   Filed 12/03/2007   Page 14 of 14

## ELECTRONIC PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los Angeles, California  90017.

    On May 23, 2006, pursuant to the Court's Electronic Case Management Order (CMO No. 1),

    []    I submitted an electronic version of the following document via file transfer protocol to CaseHomePage.

    [X]    I submitted a hard copy of the following document to CaseHomePage by facsimile.

    []    I submitted an electronic version of the document via file transfer protocol and a hard copy of the exhibits via facsimile to CaseHome Page.

    Notice of Ruling

    Executed on May 23, 2006, at Los Angeles, California.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Colleen Teeman

-1-

EXHIBIT 3
-50-