ALAN J. LAZARUS (State Bar No. 129767)
KRISTA L. COSNER (State Bar No. 213338)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendants
SMITHKLINE BEECHAM CORPORATION dba
GLAXOSMITHKLINE and McKESSON
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MOHINDER KHANNA

Plaintiff,

v.

SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, McKESSON PHARMACY SYSTEMS, and DOES ONE through FIFTEEN, inclusive,

Defendants.

Case No. CV-08-1131 MHP

**DEFENDANT SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**DATE: June 9, 2008**
**TIME: 2:00 P.M.**
**COURTROOM: 15**
**JUDGE: Hon. Marilyn H. Patel**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. ARGUMENT ........ 3

A. This Court Should Defer Ruling On Plaintiff's Remand Motion Pending MDL Transfer ........ 3

B. This Court Has Diversity Jurisdiction Over Plaintiff's Claims ........ 5

1. Plaintiff's Factual Allegations Against McKesson Do Not Provide An Adequate Causal Connection Between McKesson And His Alleged Injuries ........ 6

2. Under California Law Plaintiff Cannot Prove A Cause of Action Against McKesson For Plaintiff's Alleged Injuries ........ 8

C. This Court Has Federal Question Jurisdiction Based On Plaintiff's Claims Which Raise Questions Of Federal Law ........ 12

IV. CONCLUSION ........ 13

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) .......... 10

*Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987 (1991) .......... 9

*Aronis v. Merck & Co., Inc.*, Civ. S-05-0486 WBS DAD, 2005 U.S. Dist. LEXIS 41531, at *3 (E.D. Cal. May 3, 2005) .......... 7

*Barlow v. Warner-Lambert Co.*, Case No. CV 03-1647 R (RZx), slip op. at 2 (C.D. Cal. Apr. 28, 2003) .......... 9

*Brown v. Superior Court*, 44 Cal. 3d 1049, 1061 (1988) .......... 9, 10, 11

*Canifax v. Hercules Powder Co.*, 237 Cal. App. 2d 44, 52 (1965) .......... 9

*Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996) .......... 9

*Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121, 130 (1972) .......... 9

*Dante v. Merck & Co., Inc.*, Case No. C 07-00081, slip op. (N.D. Cal. Feb. 27, 2007) .......... 4

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*, 125 S. Ct. 2363 (2005) .......... 2, 12

*Groll v. Shell Oil Co.*, 148 Cal. App. 3d 444, 449 (1983) .......... 12

*Hamilton Materials, Inc. v. Dow Chemical Corporation*, 494 F.3d 1203, 1206 (9th Cir. 2007) .......... 5

*Huntman v. Danek Medical, Inc.*, No. 97-2155-IEG RBB, 1998 WL 663362, at *4, 6-7 (S.D. Cal. July 24, 1997) .......... 6

*In re Baycol Prods. Litig.*, MDL No. 1431, No. 02-139, 2002 WL 32155268 (D. Minn. May 24, 2002) .......... 10

*In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407, slip op. at 5 (W.D. Wa. Nov. 26, 2002) .......... 7

*In re Rezulin Prods. Liab. Litig.*,
133 F. Supp. 2d 272 (S.D.N.Y. 2001) .......... 6

*Jimenez v. Superior Court of San Diego County*,
29 Cal. 4th 473, 476 (2002) .......... 9

*Johnson v. Merck & Co., Inc.*,
Case No. C 07-00067, slip op. at 4 (N.D. Cal. Mar. 8, 2007) .......... 4

*Johnson v. Merck & Co., Inc.*,
Case No. C 05-02881, slip op. at 2 (N.D. Cal. Oct. 4, 2005) .......... 4

*Landis v. North Am. Co.*,
299 U.S. 248 (1936) .......... 3

*Legg v. Wyeth*,
428 F.3d 1317, 1320 (11th Cir. 2005) .......... 10

*Love v. Merck & Co., Inc.*,
No. 2:05-cv-02140-MCE-PAN (E.D. Cal. filed Oct. 24, 2005) .......... 3

*Lyons v. American Tobacco Co.*,
1997 U.S. Dist. LEXIS 18365, at *18-19 (S.D. Ala. 1997) .......... 6

*McCabe v. General Foods Corp.*,
811 F.2d 1336, 1339 (9th Cir. 1987 .......... 5

*McCreery v. Eli Lilly & Co.*,
87 Cal. App. 3d 77, 83-84 (1978) .......... 6

*McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*,
713 F. Supp. 185 (W.D.N.C.1989) .......... 5

*McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*,
955 F.2d 924 (4th Cir. 1992) .......... 5

*Morris v. Princess Cruises, Inc.*,
236 F.3d 1061, 1067 (9th Cir. 2001) .......... 5

*Murphy v. E.R. Squibb & Sons, Inc.*,
40 Cal. 3d 672, 680-81 (1985) .......... 10

*Murphy v. Merck & Co., Inc.*,
No. C 06-04794 (N.D. Cal. Sept. 22, 2006) .......... 4

*Parker v. Merck & Co., Inc.*,
No. C 07-2333, slip op. (N.D. Cal. June 26, 2007) .......... 4

*Ritchey v. Upjohn Drug Co.*,
139 F.3d 1313, 1318-19 (9th Cir. 1998) .......... 5

*Schaerrer v. Stewart's Plaza Pharmacy*,
79 P.3d 922, 929 (Utah 2003) .......... 10

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

*Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1818 (1996) .... 6

*Skinner v. Warner-Lambert Co.*, Case No. CV 03-1643-R (RZx), 2003 WL 25598915, at *2 (C.D. Cal. Apr. 28, 2003 .... 10

*Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176 (1907) .... 5

**Statutes, Rules & Regulations**

Califorina Civil Code § 3333 .... 6

Code of Federal Regulations, Chapter 21, § 201.56 .... 11

Code of Federal Regulations, Chapter 21, § 201.57 .... 10, 11

Code of Federal Regulations, Chapter 21, § 201.57(d) .... 11

Code of Federal Regulations, Chapter 21, § 201.59 .... 11

Code of Federal Regulations, Chapter 21, § 202 .... 10

Code of Federal Regulations, Chapter 21, § 203.50 .... 10

Code of Federal Regulations, Chapter 21, § 211 .... 10

Consumer Legal Remedies Act, Civil Code §1750 .... 2

United States Code, Chapter 21, § 331(b) .... 11

United States Code, Chapter 21, § 331(k) .... 11

United States Code, Chapter 21, § 331(o) .... 11

United States Code, Chapter 21, § 333(a) .... 11

United States Code, Chapter 21, § 352(a) .... 11

United States Code, Chapter 21, § 352(f) .... 11

United States Code, Chapter 28, § 1331 .... 2, 12

United States Code, Chapter 28, § 1332 .... 2

# I.

## INTRODUCTION

This is one of a number of cases that have recently been filed against defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE ("GSK") involving the prescription drug Avandia®. In an attempt to destroy federal jurisdiction, Plaintiff's counsel fraudulently joined a California defendant, McKesson Corporation, a wholesale pharmaceutical distributor.[1] The tactic, however, is doomed to failure, because, as a fraudulently joined defendant, McKesson's citizenship must be disregarded for purposes of 28 U.S.C. § 1441(b) and for purposes of the so-called "forum defendant rule." When McKesson's citizenship is disregarded, this Court has diversity jurisdiction over Plaintiff's claims.

In addition to diversity jurisdiction, this Court also has federal question, or "arising under," jurisdiction over this matter, because numerous counts of Plaintiff's complaint turn on violations of federal law.

Finally, though the remand motion is without merit, the prudent method of addressing this motion is to defer decision to the MDL transferee judge. The MDL Panel overseeing this litigation has already concluded that this is the proper way of dealing with motions for remand such as this. *See* Transfer Order, *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871 (J.P.M.L. Apr. 8, 2008) (transferring nine California district court cases to the MDL where plaintiffs challenged transfer and filed remand motions)(a true and correct copy of which is attached as Exhibit "A" to the Declaration of Krista L. Cosner in Support of GSK's Memorandum of Law in Opposition to Plaintiff's Motion Remand ("Cosner Decl. ISO Opposition to Remand")).

---

[1] The facts relating to McKesson are attested in the Declaration of Greg Yonko, a true and correct copy of which is attached as Exhibit "C" to the Declaration of Krista L. Cosner in Support of Notice of Removal and Removal by Smithkline Beecham Corporation d/b/a GlaxoSmithKline (hereinafter "Cosner Decl. ISO Removal").

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

## II.

## BACKGROUND

Plaintiff commenced this action in the Superior Court of the State of California for the County of San Francisco on February 19, 2008, asserting claims of (1) strict liability–failure to warn; (2) negligence; (3) breach of implied warranty; (4) breach of express warranty; (5) fraud; (6) fraud by concealment; (7) negligent misrepresentation; and (8) violations of the Consumer Legal Remedies Act, Civil Code §1750, *et seq*. Plaintiff avers that collectively, "Defendants" or "Defendants, and each of them," defectively designed and manufactured Avandia; minimized known risks associated with Avandia; failed to conduct adequate and sufficient testing and surveillance of Avandia; failed to warn consumers and/or their health care providers of certain risks associated with Avandia; failed to utilize adequate and non-misleading labeling; and made affirmative misrepresentations and omissions regarding the alleged risks of Avandia.

On February 25, 2008, GSK removed this action to this court, based on diversity jurisdiction under 28 U.S.C. § 1332, and federal question jurisdiction under 28 U.S.C. § 1331 and the principles set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*, 125 S. Ct. 2363 (2005).[2] *See* Notice of Removal (filed Feb. 25, 2008). GSK also sought the transfer of this action to the Multidistrict Litigation, *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871 (E.D. Pa.), and the Judicial Panel on Multidistrict Litigation ("JPML") included this matter in Conditional Transfer Order 11. On March 28, 2008, Plaintiff objected to transfer to the MDL and, as a result, transfer remains pending before the JPML.[3]

---

[2] At the time of removal, neither defendant had been served with Plaintiff's Complaint; Service has still not been made upon either defendant.

[3] On May 29, 2008, the JPML is scheduled to consider, without oral argument, Plaintiff's objection to transfer. In the nine previous Avandia cases in which the JPML considered plaintiffs' objections to transfer, it overruled the objections and transferred the cases to the MDL. Cosner Decl. ISO Opposition to Remand, ¶ 3. There is no reason to believe this case will be treated any differently.

Plaintiff filed his motion on March 10, 2008, seeking remand of this case to the Superior Court of the State of California for the County of San Francisco. As explained below, Plaintiff's motion is without merit, and it should be denied.

## III.

## ARGUMENT

### A. This Court Should Defer Ruling On Plaintiff's Remand Motion Pending MDL Transfer

As GSK argued in its Motion to Stay All Proceedings Pending Transfer by the JPML, filed April 11, 2008, this Court should not rule on Plaintiff's remand motion, but should stay this case until it is transferred to the Avandia MDL, MDL No. 1871.[4] Allowing the transferee court to decide this Motion, along with other pending Motions to Remand,[5] will conserve the resources of the Court, will ensure consistent rulings, and will not prejudice the Plaintiff to any significant degree. *See* Def.'s Mot. to Stay All Proceedings; *see also Landis v. North Am. Co.,* 299 U.S. 248 (1936).

The Judicial Panel on Multidistrict Litigation ("JPML") has already reached this conclusion, transferring nine previous California Avandia cases to the MDL, with remand motions pending, over the objections of plaintiffs challenging transfer. *See* Transfer Order, Exh. A to Cosner Decl. ISO Opposition to Remand. All of the transferred cases involved the issue of fraudulent joinder of McKesson.[6] In its Transfer Order, the JPML

---

[4] In the Motion to Stay All Proceedings, *Love v. Merck & Co., Inc.*, No. 2:05-cv-02140-MCE-PAN (E.D. Cal. filed Oct. 24, 2005) was incorrectly cited as *Love v. Merck & Co., Inc.*, 2005 U.S. Dist. LEXIS 917, No. 05-2140 (E.D. Cal. filed Oct. 24, 2005). *See* Def.'s Mot. to Stay All Proceedings, at 6 n.1.

[5] Judge Cynthia Rufe, the MDL transferee judge, has indicated that she will consider all pending remand motions within approximately the next two months. Cosner Decl. ISO Opposition to Remand, ¶ 4.

[6] One of the transferred cases was *Leslie Boone v. SmithKline Beecham Corp., et al. Boone* was filed in state court and removed to the Central District of California, where it was assigned to the Honorable Stephen G. Larson. Plaintiffs filed a Motion to Remand and GSK filed a Motion to Stay, both of which were fully briefed. Judge Larson heard argument on both motions; however, he did not decide either. Rather, by declining to act on the pending motions, he allowed the case to be transferred to the MDL, where the still-pending Motion to Remand will be decided. Cosner Decl. ISO Opposition to Remand, ¶ 5.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

explained that transfer would have the "salutary effect of placing all actions in this docket before a single judge" who can ensure a "just and expeditious resolution of the issues." *See* Transfer Order, Exh. A to Cosner Decl. ISO Opposition to Remand, ¶ 4.

Further precedent for deferring remand decisions to MDL transferee courts can be found in the Vioxx litigation, in which this Court and other Northern District judges were faced with several cases removed on grounds identical to the grounds for removal of this case; namely, that McKesson was fraudulently joined, and, when its citizenship was properly disregarded, there was complete diversity of citizenship between plaintiffs and defendants. Ruling on plaintiffs' remand motions was deferred, on the grounds of judicial economy and consistency, and the cases were stayed pending transfer to the MDL. *See, e.g.*, *Murphy v. Merck & Co., Inc.*, No. C 06-04794 (N.D. Cal. Sept. 22, 2006) (Patel, J.) (staying case pending transfer to MDL proceeding where McKesson was named as a co-defendant); *Johnson v. Merck & Co., Inc.*, Case No. C 05-02881, slip op. at 2 (N.D. Cal. Oct. 4, 2005) (Patel, J.) ("In light of the number of cases presenting issues similar to this action and the need for judicial consistency with respect to those cases, this court finds that the interest of judicial economy favors staying this action pending its transfer to [the Vioxx MDL].").[7]

For identical reasons, this Court should defer ruling on Plaintiff's Motion to Remand, and should stay all proceedings in this case until it is transferred to the Avandia MDL.

---

[7] *See also* *Johnson v. Merck & Co., Inc.*, Case No. C 07-00067, slip op. at 4 (N.D. Cal. Mar. 8, 2007) (Alsup, J.) ("It would be an inefficient use of resources to unnecessarily duplicate the efforts of the transferee judge, who will undoubtedly face most (if not all) of the same issues in dealing with the other pending remand motions. Staying the proceedings will best serve the interests of judicial economy."); *Dante v. Merck & Co., Inc.*, Case No. C 07-00081, slip op. at 2 (N.D. Cal. Feb. 27, 2007) (Ware, J.) (staying case with pending remand motion where McKesson was named as co-defendant because "[i]n light of the number of other cases presenting issues similar to this action and the need for judicial consistency with respect to those cases, the Court finds that the interest of judicial economy favors staying this action pending its transfer to the MDL Proceeding"); *see also Parker v. Merck & Co., Inc.*, No. C 07-2333, slip op. at 2 (N.D. Cal. June 26, 2007) (Illston, J.) (staying case pending transfer to MDL and deferring ruling on remand where case removed on the basis of fraudulent joinder).

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

**B. This Court Has Diversity Jurisdiction Over Plaintiff's Claims**

If the Court proceeds to consider Plaintiff's Motion to Remand prior to MDL transfer, it should deny Plaintiff's motion because Plaintiff has fraudulently joined McKesson, a citizen of California, as a defendant.

The fraudulent joinder doctrine requires courts to disregard the citizenship of defendants when no viable cause of action has been stated against them, or when evidence presented by the removing party demonstrates that there is no factual basis for the claims pleaded against the defendant. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998). A defendant is also considered fraudulently joined when the failure to state a cause of action against the defendant is "obvious according to the settled rules of the state." *Hamilton Materials, Inc. v. Dow Chemical Corporation*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).[8]

As set forth below, Plaintiff cannot state a cause of action against the distributor McKesson because (a) Plaintiff's allegations do not provide an adequate causal connection between McKesson and his injuries; and (b) a wholesale distributor cannot be liable under any reasonable view of California law for alleged defects in a drug it did not make, or for the alleged inadequacy of warnings over which it had no control. In sum, there is no reasonable likelihood that Plaintiff can prevail on his claims against McKesson. Because these deficiencies demonstrate that McKesson has been fraudulently joined as a defendant in this matter, this Court should disregard McKesson's citizenship so that it may exercise its jurisdiction based on the complete diversity of the parties.

---

[8] Moreover, removal was created by Congress to protect defendants. Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) (quoting *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 713 F. Supp. 185, 189 (W.D.N.C.1989)). As the Supreme Court long ago said, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

**1. Plaintiff's Factual Allegations Against McKesson Do Not Provide An Adequate Causal Connection Between McKesson And His Alleged Injuries**

To state a personal injury claim against a pharmaceutical distributor, a plaintiff must, as a threshold matter, allege an actual connection between the distributor's alleged conduct and the plaintiff's purported injury. *See, e.g.*, *Huntman v. Danek Medical, Inc.*, No. 97-2155-IEG RBB, 1998 WL 663362, at *4, 6-7 (S.D. Cal. July 24, 1997) (strict liability, negligence, and negligence per se claims require proof that alleged misconduct was directed at plaintiff or plaintiff's physician); *Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1818 (1996) ("In order to recover for fraud, as in any other tort, the plaintiff must plead and prove the 'detriment proximately caused' by the defendant's tortuous conduct.") (citing Cal. Civ. Code § 3333); *see also McCreery v. Eli Lilly & Co.*, 87 Cal. App. 3d 77, 83-84 (1978). Where, as here, plaintiff fails to allege such a link, federal courts have recognized that non-diverse distributors are fraudulently joined and do not defeat diversity jurisdiction. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001) (denying motion to remand where plaintiffs named a non-diverse defendant and alleged that a distributor defendant was "in the business of distributing and selling the pharmaceutical" on grounds that plaintiffs did not allege that the defendant "actually sold" the pharmaceutical product to the plaintiffs).

In its Notice of Removal, GSK noted that the factual allegations against McKesson were insufficient to establish a connection between McKesson and Plaintiff's alleged injuries. First, although "McKesson is only one of many suppliers that could have supplied Avandia to the numerous pharmacies throughout the United States," *see* Cosner Decl. ISO Removal, Exh. C. at ¶ 8, there is "no better admission of fraudulent joinder" than Plaintiff's failure "to set forth any specific factual allegations" against a defendant. *Lyons v. American Tobacco Co.*, 1997 U.S. Dist. LEXIS 18365, at *18-19 (S.D. Ala. 1997). Moreover, only one paragraph of Plaintiff's Complaint contains any direct allegations against McKesson. *See* Pl.'s Compl. at 2:9-11 ("Defendant McKesson

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

is, and was, engaged in the business of marketing, distributing, promoting, advertising and selling Avandia nationwide and in the State of California.”).

Courts have held that generic allegations against multiple defendants are insufficient to create a causal connection between a plaintiff's alleged injuries and the conduct of a single defendant. *See, e.g.*, *Aronis v. Merck & Co., Inc.*, Civ. S-05-0486 WBS DAD, 2005 U.S. Dist. LEXIS 41531, at *3 (E.D. Cal. May 3, 2005); *see also In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407, slip op. at 5 (W.D. Wa. Nov. 26, 2002) (allegations directed toward “defendants” or “all defendants” insufficient). In the instant case, in addition to the single paragraph specifically directed at McKesson, the remaining allegations are directed at “Defendants” or “Defendants, and each of them.” *See, e.g.*, *id.* at ¶ 9 (“. . . Defendants, and each of them, intentionally, recklessly and/or negligently . . .”); ¶ 16 (“. . . Defendants, and each of them, concealed the known risks . . .”).

In *Aronis*, the plaintiff alleged that her heart attack was caused by the prescription medication Vioxx, and Merck—the manufacturer of Vioxx—removed the case to federal court on grounds that all the requisites of diversity jurisdiction existed. In an effort to defeat diversity, the plaintiff in that case, as here, named distributor-defendant McKesson, who, like the plaintiff, was a citizen of California. The court concluded that complete diversity existed and removal was proper because the plaintiff made “no allegation that McKesson ever handled the specific pills that were allegedly the cause of her injuries.” *Aronis,* 2005 U.S. Dist. LEXIS 41531, at *3.

The rationale in *Aronis* applies with equal force here. Plaintiff's allegations against McKesson are general, conclusory, and do not even allege that McKesson distributed the Avandia that Plaintiff ingested. Such “bare-bones” allegations are plainly incapable of supporting a claim against McKesson, especially considering multiple distributors could have supplied Plaintiff's Avandia, and thus, McKesson is fraudulently joined. *See Aronis,* 2005 U.S. Dist. LEXIS 41531, at *3-4.

**2. Under California Law Plaintiff Cannot Prove A Cause of Action Against McKesson For Plaintiff's Alleged Injuries**

Plaintiff's claims against McKesson, which are contained in general allegations against "Defendants, and each of them," are substantively based on the design and manufacture of Avandia, inadequate pre-clinical testing and post-marketing surveillance, failure to warn, fraudulent concealment, and misrepresentation. *See, e.g.*, Pl.'s Compl. at ¶¶ 9, 16, 25-29, 54-58. As a wholesale distributor, McKesson played no role whatsoever in Avandia's testing, marketing or advertising. Plaintiff, however, alleges that McKesson's acquisition of Kelly/Waldron and Kelly/Waldron SFA, a "provider of 'sales force automation systems and services for pharmaceutical sales forces,'" establishes that McKesson played an active role in the marketing and promotion of Avandia. *See* Pl.'s Br. at 6-7. This argument is without merit. Before and after the acquisition of Kelly/Waldron, all McKesson did was pass along unopened bottles of Avandia, in unadulterated form, to hospitals and other businesses in the healthcare industry. *See* Cosner Decl. ISO Removal, Exh. C. at ¶¶ 6, 7 ("McKesson did not manufacture, produce, process, test, encapsulate, label, [or] package Avandia®, nor does it make any representations or warranties as to the product's safety or efficacy;" "[McKesson] only delivered the unopened boxes that contained the drug"). The fact that McKesson gained control of Kelly/Waldron does not alter the fact that McKesson played no role in the marketing or promotion of Avandia or ever acted as anything more than a pass-through distributor.

Under no reasonable view of California law can a wholesale distributor be liable for injuries allegedly caused by defects in a drug it did not make, nor for allegedly inadequate warnings over which it had no control. Arguing that such liability does exist under California law, Plaintiff cites a series of Vioxx decisions from a single judge from the Central District of California. *See* Pl.'s Br. at 10-11.[9] Those isolated decisions,

---

[9] The Vioxx litigation exemplifies the danger of inconsistent decisions if multiple federal judges (continued...)

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

however, are not binding on this Court, and as explained below, do not represent correct applications of California law.[10]

California tort law treats prescription drugs differently from other products. For example, California law unequivocally bars strict liability causes of action for design defects in the prescription drug context. *See Brown v. Superior Court*, 44 Cal. 3d 1049, 1061 (1988) ("a drug manufacturer's liability for a defectively designed drug shall not be measured by the standards of strict liability"). In *Brown*, the California Supreme Court held that a manufacturer is not strictly liable or liable for breach of express or implied warranties for injuries caused by a prescription drug "so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* at 1069.

In California—as in virtually every other state—the duty to warn about a drug's risks runs directly from the manufacturer to the physician (*i.e.*, the "learned intermediary"), and then from the physician to the patient. *See Brown*, 44 Cal. 3d at 1061-62, n.9.; *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996). Accordingly, under the "learned intermediary doctrine," distributors such as McKesson owe no duty to individual patients. Because the pharmaceutical company, not the distributor, has a duty to warn physicians of the risks associated with pharmaceuticals and medical devices, courts have repeatedly concluded that distributors are fraudulently joined. *See, e.g., Barlow v. Warner-Lambert Co.*, Case No. CV 03-1647 R (RZx), slip op. at 2 (C.D. Cal. Apr. 28, 2003) (denying remand, the court found "there is no possibility that plaintiffs

---

(continued...)

decide important jurisdictional. issues. This Court's decision to allow the Vioxx MDL judge to decide the jurisdictional issues in that litigation is supported here by identical interests of consistency and efficiency. .

[10] The other cases cited by Plaintiff involve non-pharmaceutical products. *See* Pl.'s Br. at 8-9 (citing *Jimenez v. Superior Court of San Diego County*, 29 Cal. 4th 473, 476 (2002) (windows); *Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121, 130 (1972) (a component of a bread truck); *Canifax v. Hercules Powder Co.*, 237 Cal. App. 2d 44, 52 (1965) (dynamite fuses); *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987 (1991) (asbestos)).

could prove a cause of action against McKesson, an entity which distributed this FDA-approved medication [Rezulin] to pharmacists in California"); *Skinner v. Warner-Lambert Co.*, Case No. CV 03-1643-R (RZx), 2003 WL 25598915, at *2 (C.D. Cal. Apr. 28, 2003); *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672, 680-81 (1985) (under the learned intermediary doctrine, retail pharmacies can have no general duty to warn consumers of effects of prescription drugs); *In re Baycol Prods. Litig.*, MDL No. 1431, No. 02-139, 2002 WL 32155268 (D. Minn. May 24, 2002) (retail distributor of prescription drugs fraudulently joined); *Schaerrer v. Stewart's Plaza Pharmacy*, 79 P.3d 922, 929 (Utah 2003) (declining to extend duty to warn to retail distributor of prescription diet drug as long as [their] "ability to distribute prescription drugs is limited by the highly restricted FDA-regulated drug distribution system in this country . . ."); *Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005) ("[t]he Multidistrict Litigation Court . . . concluded that this joinder can 'only be characterized as a sham, at the unfair expense not only of [Wyeth] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Wyeth], the real target, in a federal forum.'") (quoting *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002)).

Furthermore, pharmaceutical warnings are highly regulated by the Food & Drug Administration ("FDA"), which militates against imposing any separate duty to warn on pharmacies and pharmaceutical distributors. The FDA closely regulates pharmaceutical manufacturing, and it controls the testing of medicines and the methods by which they are marketed, including the contents of warning labels. *Brown*, 44 Cal. 3d at 1059, n.12. The federal regulations provide specific requirements for all aspects of the medicine, the standards to be followed in manufacturing, 21 C.F.R. § 211, *et seq.*, the standards for wholesale distribution, § 203.50, the contents of its labeling, including warnings, § 201.57, and permissible representations to be made in advertisements, § 202, *et seq.* The regulations also state that a manufacturer may list only known risks and not theoretical possibilities, and that no prescription medicine may go to a distributor like McKesson

unless the labeling complies with federal regulations and is approved by the FDA. *See* 21 C.F.R. §§ 201.57(d), 201.59.

Once the labeling is approved, the information found therein cannot be altered without FDA approval. *See* 21 U.S.C. § 331(k); *Brown v. Superior Court*, 44 Cal. 3d at 1069 n.12 (noting that the FDA regulates the testing, manufacturing, and marketing of drugs, including warning label contents). Both drug manufacturers and distributors are prohibited from causing the "alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling" of an FDA-approved drug held for sale. 21 U.S.C. § 331(k).

As a distributor, McKesson had no duty to warn Plaintiff, even if it had distributed the Avandia ingested by Plaintiff. Nor could McKesson have given additional or different warnings without violating federal law. The FDA approved all Avandia warnings and marketing materials. Had McKesson provided alternative, non-FDA approved warnings, or warnings inconsistent with those approved by the FDA, it would have been in violation of federal law prohibiting false or misleading labeling and the alteration of FDA-approved labeling, 21 U.S.C. §§ 331(k) & (o), 352(a) & (f); 21 C.F.R. §§ 201.56, 201.57, and could have resulted in an enforcement action, fines or criminal penalties, 21 U.S.C. §§ 331(b) & (k), 352(a) & (f), 333(a). No duty can be found where it requires a party to violate the law.

These authorities lead to two inescapable conclusions that control this motion. First, McKesson, as a distributor, had no duty to warn Plaintiff of anything and, thus, cannot be held liable to Plaintiff, even if it did distribute the Avandia that Plaintiff allegedly ingested. Second, not only did McKesson have no duty to Plaintiff, it could not have given additional warnings without violating federal law. Both the federal regulation of warnings provided with prescription drugs and the common law approach to pharmaceutical product liability claims convey the necessity that one set of consistent and

approved warnings accompany drugs like Avandia. As such, Plaintiff may not proceed against McKesson on a theory of failure to warn.[11]

In short, there is no theory of liability under which Plaintiff could prevail against McKesson. Accordingly, when McKesson's citizenship is properly ignored, this Court has diversity jurisdiction over this case.

### C. **This Court Has Federal Question Jurisdiction Based On Plaintiff's Claims Which Raise Questions Of Federal Law**

Plaintiff's Complaint contains many assertions that depend on construction and application of federal statutes and regulations, and therefore this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and the principles set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

There are several federal questions in Plaintiff's claims, and it is in the national interest that there be a federal forum for claims that attack the federally-approved labeling of a prescription medicine. Plaintiff's First Cause of Action, "Strict Liability – Failure to Warn," Second Cause of Action, "Negligence," Fourth Cause of Action, "Breach of Express Warranty," and Seventh Cause of Action, "Negligent Misrepresentation," each require construction and application of the Federal Food, Drug and Cosmetic Act ("FDCA") and implementing federal regulations, which govern approval of prescription drugs and regulate prescription drug manufacturers' public and promotional statements, including all aspects of warnings and labeling.

Since diversity jurisdiction over this matter is clear, GSK will not address federal question jurisdiction in detail. To the extent this Court seeks further explication of the presence of federal issues and federal question jurisdiction, GSK requests leave to file an additional brief in which to present its position.

---

[11] In the context of the sale of bulk chemicals, a supplier cannot be liable for failure to warn the ultimate user when it lacked the ability to do so. *Groll v. Shell Oil Co.*, 148 Cal. App. 3d 444, 449 (1983). Here, McKesson cannot be held liable when federal law prohibited it from altering the FDA-approved labeling for Avandia.

**IV.**

**CONCLUSION**

This Court has both diversity jurisdiction and federal question jurisdiction over Plaintiff's Complaint. Accordingly, Plaintiff's Motion to Remand should be denied.

Dated: May 19, 2008

DRINKER BIDDLE & REATH LLP

/S/ Krista L. Cosner
KRISTA L. COSNER

Attorneys for Defendants SMITHKLINE BEECHAM CORPORATION dba GLAXOSMITHKLINE and McKESSON CORPORATION

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105